IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GLENN HEAGERTY,                       )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        CIVIL ACTION FILE NO.
                                      )        _____
AMIP MANAGEMENT, LLC, and             )
RUBIN LUBLIN, LLC,                    )
                                      )
        Defendants.                   )

## **COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 8, plaintiff Glenn Heagerty respectfully shows the Court the following:

### Parties, Jurisdiction and Venue

1.    Mr. Heagerty is an individual and a resident of the State of Georgia. Mr. Heagerty is a "consumer" under 15 U.S.C. 1692a(3).

2.    Defendant AMIP Management, LLC ("AMIP") is a Delaware limited liability company having its principal place of business in California.  AMIP is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91(1) because it transacts business in Georgia.  AMIP may be served with process by serving its registered agent, National Registered Agents, at 1209 Orange Street, Wilmington, Delaware 19801.  AMIP is a "debt collector" under 15 U.S.C. § 1692a(6).

3.     Defendant Rubin Lublin, LLC ("Rubin Lublin") is a Georgia limited liability company having its principal place of business in Georgia.  Rubin Lublin is subject to the jurisdiction of this Court and may be served with process by serving its registered agent, Peter Lublin, at 3145 Avalon Ridge Place, Peachtree Corners, Georgia 30071.  Rublin Lublin is a "debt collector" under 15 U.S.C. § 1692a(6).

4.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the claims asserted in this civil action arise under the laws of the United States, specifically 15 U.S.C. § 1692 *et seq.*, which is also known as the Fair Debt Collections Practices Act ("FDCPA").

5.     Venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b)(2) and Local Rule 3.1B(3).

<u>Factual Background</u>

6.     Mr. Heagerty owns and resides in a single-family home located at 2890 Willow Wisp Way, Cumming, Georgia 30040.  Mr. Heagerty has lived there since 1996.

7.     On November 21, 2019, AMIP sent two letters to Mr. Heagerty, which were contained in a single envelope.  The letters were received by Mr. Heagerty on or about November 29, 2019, and they were the first communications that Mr.

Heagerty had ever received from AMIP.  A true copy of the envelope containing those letters is attached hereto as Exhibit A.

8.     The first letter stated that the new owner of Mr. Heagerty's alleged mortgage loan was an entity called Residential Credit Opportunities Trust V-C ("Trust V-C"), that Trust V-C acquired Mr. Heagerty's alleged mortgage loan on November 15, 2019, that the new servicer of Mr. Heagerty's alleged mortgage loan was an entity called FCI Lender Services, Inc. ("FCI"), that Trust V-C had "programs" that would allow Mr. Heagerty to "regain equity" in his home and that AMIP had "programs" that would allow Mr. Heagerty to "vacate" his home and "be rid of further financial obligation" to Trust V-C.  The letter also expressly stated that it was "an attempt to collect a debt" and that "[a]ny information obtained will be used for that [collection] purpose." The letter was signed by AMIP's "CEO," Mr. Ron McMahan.  A true copy of the letter (the "First Trust V-C Letter") is attached hereto as Exhibit B.

9.     The First Trust V-C Letter was false, deceptive and misleading in the following respects:

a.     It did not identify AMIP by name in the text of the letter and did not disclose that Mr. McMahan was the CEO of AMIP.

b.     Trust V-C was not the owner of Mr. Heagerty's alleged mortgage loan.  According to deed records on file with the Superior Court of

Forsyth County, Georgia at Book 8648, Page 196 and Book 9168, Page 317, Mr. Heagerty's alleged mortgage loan was allegedly owned by an entity called U.S. Bank National Association as Trustee for Bluewater Investment Trust 2018-A. True copies of those records are attached hereto as Exhibit C.

      c.    Trust V-C did not acquire Mr. Heagerty's alleged mortgage loan on November 15, 2019.

      d.    Mr. Heagerty did not owe any money to Trust V-C.

      e.    FCI was not the servicer of Mr. Heagerty's alleged mortgage loan.

      f.    Trust V-C did not have authority to negotiate any aspect of Mr. Heagerty's alleged mortgage loan, *i.e.* provide Mr. Heagerty with a "program" to allow him to "regain equity" in his home or release Mr. Heagerty from "further financial obligation" with respect to his alleged mortgage loan if he wished to "vacate" his home.

10.    The second letter informed Mr. Heagerty that ownership of his alleged mortgage loan had been transferred to Trust V-C, that Trust V-C and AMIP work to assist homeowners with their "homeownership problems," and that FCI was the new servicer for Mr. Heagerty's alleged mortgage loan. The letter also expressly stated that it was "an attempt to collect a debt" and that "[a]ny information obtained will be used for that [collection] purpose." The letter was

signed by AMIP's "CEO," Mr. Ron McMahan.  A true copy of the letter (the "Second Trust V-C Letter") is attached hereto as Exhibit D.

11.     The Second Trust V-C Letter was false, deceptive and misleading for the reasons alleged in Paragraph 9 above.

12.     Furthermore, neither the First Trust V-C Letter nor the Second Trust V-C Letter:

a.     Informed Mr. Heagerty of the amount of his alleged debt to Trust V-C.

b.     Contained a statement that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."

c.     Contained a statement that if "the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector."

d.     Contained a statement that "upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

13.    The information described in the preceding Paragraph was not provided to Mr. Heagerty within five days of his receipt of the First and Second Trust V-C Letters either.

14.    On December 2, 2019, Mr. Heagerty invoked his rights under 15 U.S.C. 1692g(b), disputing that he owed any debt to Trust V-C and requesting that AMIP validate the alleged debt to Trust V-C.  A true copy of Mr. Heagerty's December 2, 2019 letter is attached hereto as Exhibit E.

15.    AMIP did not respond to Mr. Heagerty's December 2, 2019 letter.

16.    On January 14, 2020, AMIP sent two more letters to Mr. Heagerty, which were both contained in a single envelope.  Although those letters were dated November 21, 2019, they were not actually mailed to Mr. Heagerty until seven weeks later, *i.e.* on January 14, 2020, as proven by the postmark on the envelope containing the letters, a true copy of which is attached hereto as Exhibit F.  Those letters were received by Mr. Heagerty no earlier than January 22, 2020.

17.    In the first of the letters that Mr. Heagerty received in January 2020, AMIP stated that the new owner of Mr. Heagerty's alleged mortgage loan was an entity called Residential Credit Opportunities Trust V-E ("Trust V-E"), that Trust V-E acquired Mr. Heagerty's alleged mortgage loan on November 15, 2019, that the new servicer of Mr. Heagerty's alleged mortgage loan was FCI, that Trust V-E had programs that would allow Mr. Heagerty to "regain equity" in his home and

that AMIP had "programs" that would allow Mr. Heagerty to "vacate" his home and "be rid of further financial obligation" to Trust V-E.  The letter also expressly stated that it was "an attempt to collect a debt" and that "[a]ny information obtained will be used for that [collection] purpose." The letter was signed by AMIP's "CEO," Mr. Ron McMahan.  A true copy of the letter (the "First Trust V-E Letter") is attached hereto as Exhibit G.

18.     The First Trust V-E Letter was false, deceptive and misleading in the following respects:

a.     It did not identify AMIP by name in the text of the letter and did not disclose that Mr. McMahan was the CEO of AMIP.

b.     Trust V-E was not the owner of Mr. Heagerty's alleged mortgage loan as of November 15, 2019, as stated in the letter.  According to deed records on file with the Superior Court of Forsyth County, Georgia at Book 8648, Page 196 and Book 9168, Page 317, Mr. Heagerty's alleged mortgage loan was owned by an entity called U.S. Bank National Association as Trustee for Bluewater Investment Trust 2018-A.  True copies of those records are attached hereto as Exhibit C.

c.     Trust V-E did not acquire Mr. Heagerty's alleged mortgage loan on November 15, 2019.

d.     Mr. Heagerty did not owe any money to Trust V-E.

e.      FCI was not the servicer of Mr. Heagerty's alleged mortgage loan as of November 15, 2019.

f.      As of November 21, 2019, Trust V-E did not have authority to negotiate any aspect of Mr. Heagerty's alleged mortgage loan, *i.e.* provide Mr. Heagerty with a "program" to allow him to "regain equity" in his home or release Mr. Heagerty from "further financial obligation" with respect to his alleged mortgage loan if he wished to "vacate" his home.

g.      The First Trust V-E Letter was also contradicted by and inconsistent with the First and Second Trust V-C Letters insofar as it contained representations that Mr. Heagerty's alleged mortgage loan had been transferred to Trust V-E, as opposed to Trust V-C, on November 15, 2019.

h.      The First Trust V-E Letter set forth a deceptive date, purporting to have been posted on November 21, 2019, when it was actually posted more than a month later, *i.e.* on January 14, 2020.   Indeed, the letter appears to have been back-dated.

19.      In the second of the letters that Mr. Heagerty received in January 2020, AMIP stated that ownership of Mr. Heagerty's alleged mortgage loan had been transferred to Trust V-E on November 15, 2019, that Trust V-E and AMIP work to assist homeowners with their "homeownership problems," and that FCI was the new servicer for Mr. Heagerty's alleged mortgage loan.   The letter also expressly

stated that it was "an attempt to collect a debt" and that "[a]ny information obtained will be used for that [collection] purpose." The letter was signed by AMIP's "CEO," Mr. Ron McMahan.  A true copy of the letter (the "Second Trust V-E Letter") is attached hereto as Exhibit H.

20.    The Second Trust V-E Letter was false, deceptive and misleading for the reasons alleged in Paragraph 18 above.

21.    Furthermore, neither the First Trust V-E Letter nor the Second Trust V-E Letter:

a.    Informed Mr. Heagerty of the amount of his alleged debt to Trust V-E.

b.    Contained a statement that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."

c.    Contained a statement that if "the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector."

d.    Contained a statement that "upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer

with the name and address of the original creditor, if different from the current creditor."

22.     The information described in the preceding Paragraph was not provided to Mr. Heagerty within five days of his receipt of the First and Second Trust V-E Letters either.

23.     On February 21, 2020, Mr. Heagerty invoked his rights under 15 U.S.C. 1692g(b), disputing that he owed any debt to Trust V-E and requesting that AMIP validate the alleged debt to Trust V-E.  A true copy of Mr. Heagerty's February 21, 2020 letter to AMIP is attached hereto as Exhibit I.

24.     AMIP did not respond to Mr. Heagerty's February 21, 2020 letter.

25.     Sometime prior to February 13, 2020, AMIP retained Rubin Lublin to collect Mr. Heagerty's alleged mortgage debt, and on that day, Rubin Lublin sent two letters to Mr. Heagerty.

26.     In the first letter, which was entitled "Notice Pursuant to the Fair Debt Collection Practices Act (If Applicable)," Rublin Lublin stated that it represented "Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-E," which was the owner of Mr. Heagerty's alleged mortgage loan.  The letter went on to threaten non-judicial foreclosure on Mr. Heagerty's home if the alleged mortgage was not brought current or paid off.  A true copy of that letter (the "RL FDCPA Notice") is attached hereto as Exhibit J.

27.    In the second letter, which was entitled "Notice of Acceleration and Foreclosure," Rubin Lublin stated that "Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-E" was the owner of Mr. Heagerty's alleged mortgage loan, declared Mr. Heagerty's alleged mortgage loan due and in default and advised Mr. Heagerty that it (Rublin Lublin) was instituting "non-judicial foreclosure proceedings" against Mr. Heagerty's home.  A true copy of that letter (the "RL Foreclosure Notice") is attached hereto as Exhibit K.

28.    At the time Rublin Lublin sent the RL FDCPA Notice and the RL Foreclosure Notice, in which Rublin Lublin threatened to take non-judicial action to effect dispossession of Mr. Heagerty from his home, Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-E ("Wilmington") lacked a present right to possession of that property, to wit:

a.    According to the RL FDCPA Notice and the RL Foreclosure Notice, Wilmington claimed to be the successor in interest to the "Original Lender" to Mr. Heagerty, Capital One Home Loans, LLC ("Capital One').

b.    However, the security deed that Capital One allegedly received from Mr. Heagerty was defective.  According to deed records on file with the Superior Court of Forsyth County, Georgia at Book 8037, Page 456 and Book 7070, Page 754-755, the security deed allegedly signed by Mr. Heagerty was not properly

attested or witnessed, and Capital One denied having a record of making a loan on Mr. Heagerty's home.  True copies of those records are attached hereto as Exhibit L.

c.     As a result of the defects described in the preceding subparagraph, neither Wilmington nor Trust V-E had a present right to possession of Mr. Heagerty's home as of February 13, 2020.

29.     On February 21, 2020, Mr. Heagerty invoked his rights under 15 U.S.C. 1692g(b), and sent two letters to Rubin Lublin disputing that he owed any debt to Wilmington or Trust V-E and requesting that Rublin Lublin validate the alleged debt to Trust V-E.  True copies of Mr. Heagerty's February 21, 2020 letters to Rublin Lublin, minus attachments, are attached hereto as Exhibit M.

30.     On March 2, 2020, Rublin Lublin sent a letter responding to Mr. Heagerty's February 21, 2020 letter and purporting to validate Mr. Heagerty's alleged debt to Wilmington or Trust V-E (the "RL Validation Letter").  A true copy of the RL Validation Letter is attached hereto as Exhibit N.

31.     The RL Validation Letter failed to validate Mr. Heagerty's alleged debt to Wilmington or Trust V-E and was false, deceptive and misleading for the following reasons:

a.     It incorrectly identified AMIP as the "servicer" for Mr. Heagerty's alleged debt, when AMIP had previously stated that it was not the

servicer of that alleged debt in the First and Second Trust V-C and Trust V-E Letters.

> b.     It did not state the amount due from Mr. Heagerty on his alleged debt to Wilmington or Trust V-E, but attached a set of spreadsheets from other lenders, including Bank of America, Shellpoint Mortgage and Ocwen Loan Servicing, LLC.

> c.     The spreadsheets attached to the RL Validation Letter were outdated, showing balances from as early as April 2008 and as late as January 2018, but none as of March 2020.

> d.     The spreadsheets attached to the RL Validation Letter were confusing, internally contradictory, contradicted by the RL FDCPA Notice and purported to show various balances for Mr. Heagerty's alleged mortgage loan, including a balance of over $500,000, which was incorrect.

32.     After reviewing the RL Validation Letter, Mr. Heagerty was confused and believed that the letter did not validate the alleged debt. Accordingly, on March 9, 2020, he sent Rubin Lublin a letter demanding that efforts to collect the alleged debt cease until such time as the alleged debt was properly validated. A true copy of Mr. Heagerty's March 9 letter is attached hereto as Exhibit O.

33.    Notwithstanding the failure of the RL Validation Letter to properly validate Mr. Heagerty's alleged debt to Wilmington or Trust V-E, Rubin Lublin continued its collection efforts.

34.    On May 22, 2020, Rubin Lublin sent two more letters to Mr. Heagerty.

35.    In the first letter, which was entitled "Notice Pursuant to the Fair Debt Collection Practices Act (If Applicable)," Rublin Lublin stated that it represented "Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-E," which was the owner of Mr. Heagerty's alleged mortgage loan.  The letter went on to threaten non-judicial foreclosure on Mr. Heagerty's home if the alleged mortgage was not brought current or paid off.  A true copy of that letter (the "Second RL FDCPA Notice") is attached hereto as Exhibit P.

36.    In the second letter, which was entitled "Notice of Acceleration and Foreclosure," Rubin Lublin stated that "Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-E" was the owner of Mr. Heagerty's alleged mortgage loan, declared Mr. Heagerty's alleged mortgage loan due and in default and advised Mr. Heagerty that it (Rublin Lublin) was instituting "non-judicial foreclosure proceedings" against Mr. Heagerty's home.  A true copy of that letter (the "Second RL Foreclosure Notice") is attached hereto as Exhibit Q.

37.     At the time Rublin Lublin sent the Second RL FDCPA Notice and the Second RL Foreclosure Notice, in which Rublin Lublin threatened to take non-judicial action to effect dispossession of Mr. Heagerty from his home, Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-E ("Wilmington") lacked a present right to possession of that property for reasons explained in Paragraph 28 above.

38.     After receiving the Second RL FDCPA Notice and the Second RL Foreclosure Notice, Mr. Heagerty sent a debt dispute and validation email to Rublin Lublin.  A true copy of that email minus attachments, which is dated June 4, 2020, is attached hereto as Exhibit R.

39.     On June 11, 2020, Rubin Lublin responded to Mr. Heagerty's June 4 email by letter purporting to validate the alleged debt (the "Second RL Validation Letter"), a true copy of which is attached hereto as Exhibit S.  That letter attached the same spreadsheets that were attached to Rublin Lublin's March 2, 2020 letter, which is Exhibit N to this Complaint.

40.     The Second RL Validation Letter failed to validate Mr. Heagerty's alleged debt to Wilmington or Trust V-E and was false, deceptive and misleading for the reasons set forth in Paragraph 31 above.

41.     On June 17, 2020, Mr. Heagerty sent yet another email to Rubin Lubin disputing the alleged debt and demanding validation of same. A true copy of that email, minus attachments, is attached hereto as Exhibit T.

42.     Rublin Lublin responded to that email with a letter dated June 18, 2020 (the "Third RL Validation Letter"), a true copy of which is attached hereto as Exhibit U.  The Third RL Validation Letter failed to validate Mr. Heagerty's alleged debt to Wilmington or Trust V-E and was false, deceptive and misleading for the following reasons:

        a.     It did not state the amount due from Mr. Heagerty on his alleged debt to Wilmington or Trust V-E or otherwise verify the debt, but merely attached certain deed records allegedly related to his home.

        b.     The deed records that were attached were incomplete and did not include the records included in Exhibit L, which was a material omission.

43.     Despite its failure to properly validate the alleged debt, Rubin Lublin's and AMIP's efforts to collect on Mr. Heagerty's alleged debt continue to this day, as Rublin Lublin, acting at the direction of AMIP, has published notice of foreclosure on Mr. Heagerty's home, which is scheduled to take place on July 7, 2020.  A true copy of that foreclosure notice is attached hereto as Exhibit V.

44.     As a result of the actions of AMIP and Rublin Lublin, Mr. Heagerty has suffered actual damages, including without limitation severe emotional

distress, which includes anxiety, panic attacks, inability to sleep, loss of appetite, loss of interest in hobbies and inability to focus at work.

<u>Count 1 – Violation of 15 U.S.C. § 1692e by AMIP</u>

45.     AMIP violated 15 U.S.C. § 1692e by sending Mr. Heagerty the First and Second Trust V-C Letters, which were false, deceptive and misleading for the reasons alleged in Paragraphs 9 and 11 above.

46.     AMIP violated 15 U.S.C. § 1692e by sending Mr. Heagerty the First and Second Trust V-E Letters, which were false, deceptive and misleading for the reasons alleged in Paragraphs 18 and 20 above.

47.     As a proximate result of AMIP's violations of 15 U.S.C. § 1692e, Mr. Heagerty has suffered actual damages, as alleged in Paragraph 44 above, and is entitled to recover such damages in an amount to be proven at trial pursuant to 15 U.S.C. § 1692k(a)(1).

48.     As a result of AMIP's violations of 15 U.S.C. § 1692e, Mr. Heagerty is also entitled to recover statutory damages in the amount of $1,000 pursuant to 15 U.S.C. § 1692k(a)(2).

49.     As a result of AMIP's violations of 15 U.S.C. § 1692e, Mr. Heagerty is entitled to recover the costs of this action and his reasonable attorneys fees in an amount determined by the Court pursuant to 15 U.S.C. § 1692k.

## Count 2 – Violation of 15 U.S.C. § 1692g by AMIP

50.    AMIP violated 15 U.S.C. § 1692g by failing to provide Mr. Heagerty with the information required by subsection (a) of that code section in either the First or Second Trust V-C Letters or within five days thereof, as alleged in Paragraphs 12 and 13 above.

51.    AMIP violated 15 U.S.C. § 1692g by failing to provide Mr. Heagerty with the information required by subsection (a) of that code section in either the First or Second Trust V-E Letters or within five days thereof, as alleged in Paragraphs 21 and 22 above.

52.    As a proximate result of AMIP's violations of 15 U.S.C. § 1692g, Mr. Heagerty has suffered actual damages, as alleged in Paragraph 44 above, and is entitled to recover such damages in an amount to be proven at trial pursuant to 15 U.S.C. § 1692k(a)(1).

53.    As a result of AMIP's violations of 15 U.S.C. § 1692g, Mr. Heagerty is also entitled to recover statutory damages in the amount of $1,000 pursuant to 15 U.S.C. § 1692k(a)(2).

54.    As a result of AMIP's violations of 15 U.S.C. § 1692g, Mr. Heagerty is entitled to recover the costs of this action and his reasonable attorneys fees in an amount determined by the Court pursuant to 15 U.S.C. § 1692k.

## Count 3 – Violation of 15 U.S.C. § 1692f(6)(a) by Rubin Lublin

55.     Rublin Lublin violated 15 U.S.C. 1692f(6)(a) by threatening to take non-judicial action to effect dispossession of Mr. Heagerty from his home as alleged in Paragraphs 28 and 37 above.

56.     As a proximate result of Rublin Lublin's violations of 15 U.S.C. § 1692f(6)(a), Mr. Heagerty has suffered actual damages, as alleged in Paragraph 44 above, and is entitled to recover such damages in an amount to be proven at trial pursuant to 15 U.S.C. § 1692k(a)(1).

57.     As a result of Rublin Lublin's violations of 15 U.S.C. § 1692f(6)(a), Mr. Heagerty is also entitled to recover statutory damages in the amount of $1,000 pursuant to 15 U.S.C. § 1692k(a)(2).

58.     As a result of Rublin Lublin's violations of 15 U.S.C. § 1692f(6)(a), Mr. Heagerty is entitled to recover the costs of this action and his reasonable attorneys fees in an amount determined by the Court pursuant to 15 U.S.C. § 1692k.

## Count 4 – Violation of 15 U.S.C. § 1692e by Rubin Lublin

59.     Rubin Lublin violated 15 U.S.C. § 1692e by sending Mr. Heagerty the RL Validation Letter, the Second RL Validation Letter and the Third RL Validation Letter, which were false, deceptive and misleading for the reasons described in Paragraphs 31, 40 and 42 above.

60.     Rubin Lublin violated 15 U.S.C. § 1692e by sending Mr. Heagerty the First and Second RL FDCPA Notices and the First and Second RL Foreclosure Notices, which were false, deceptive and misleading for the reasons described in Paragraphs 28 and 37 above.

61.     As a proximate result of Rubin Lublin's violations of 15 U.S.C. § 1692e, Mr. Heagerty has suffered actual damages, as alleged in Paragraph 44 above, and is entitled to recover such damages in an amount to be proven at trial pursuant to 15 U.S.C. § 1692k(a)(1).

62.     As a result of Rubin Lublin's violations of 15 U.S.C. § 1692e, Mr. Heagerty is also entitled to recover statutory damages in the amount of $1,000 pursuant to 15 U.S.C. § 1692k(a)(2).

63.     As a result of Rubin Lublin's violations of 15 U.S.C. § 1692e, Mr. Heagerty is entitled to recover the costs of this action and his reasonable attorneys fees in an amount determined by the Court pursuant to 15 U.S.C. § 1692k.

Count 5 - Violation of 15 U.S.C. § 1692g(b) by AMIP and Rubin Lublin

64.     AMIP and Rubin Lublin failed to respond or properly respond to Mr. Heagerty's debt validation letters as alleged in Paragraphs 15, 24, 30-31 and 39-42 above.

65.     Nevertheless, AMIP and Rubin Lublin continued collection activity against Mr. Heagerty, which violated 15 U.S.C. § 1692g(b).

66.     As a proximate result of AMIP's and Rublin Lublin's violations of 15 U.S.C. § 1692g(b), Mr. Heagerty has suffered actual damages, as alleged in Paragraph 44 above, and is entitled to recover such damages in an amount to be proven at trial pursuant to 15 U.S.C. § 1692k(a)(1).

67.     As a result of AMIP's and Rubin Lublin's violations of 15 U.S.C. § 1692g(b), Mr. Heagerty is also entitled to recover statutory damages in the amount of $1,000 pursuant to 15 U.S.C. § 1692k(a)(2).

68.     As a result of AMIP's and Rubin Lublin's violations of 15 U.S.C. § 1692g(b), Mr. Heagerty is entitled to recover the costs of this action and his reasonable attorneys fees in an amount determined by the Court pursuant to 15 U.S.C. § 1692k.

WHEREFORE, Mr. Heagerty respectfully prays that the Court:

1.     Issue process to Defendants AMIP and Rubin Lublin;

2.     Conduct a trial by jury of all claims asserted herein;

3.     Enter judgment in favor of Mr. Heagerty as consistent with the jury's verdict; and

4.     Grant Mr. Heagerty such other and further relief as it deems just and necessary.

This 29th day of June, 2020.

**MCRAE BERTSCHI & COLE LLC**       */s Craig E. Bertschi*
Suite 200, 1350 Center Drive          Craig E. Bertschi
Dunwoody, Georgia 30338               Georgia Bar No. 055739
                                       ceb@mcraebertschi.com
                                       678.999.1102

                                       Charles J. Cole
                                       Georgia Bar No. 176704
                                       cjc@mcraebertschi.com
                                       678.999.1105

                                       *Counsel for Plaintiff*