IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GLENN HEAGERTY,<br><br>   Plaintiff,<br><br>v.<br><br>AMIP MANAGEMENT, LLC, and<br>RUBIN LUBLIN, LLC,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION FILE NO.<br>)   1:20-cv-02727-SCJ-RGV<br>)<br>)<br>)<br>)<br>) |

## **FIRST AMENDED COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 8 and 15, plaintiff Glenn Heagerty respectfully shows the Court the following:

Parties, Jurisdiction and Venue

1. Mr. Heagerty is an individual and a resident of the State of Georgia. Mr. Heagerty is a "consumer" under 15 U.S.C. 1692a(3).

2. Defendant AMIP Management, LLC ("AMIP") is a Delaware limited liability company having its principal place of business in California. AMIP is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91(1) because it transacts business in Georgia. AMIP may be served with process by serving its registered agent, National Registered Agents, at 1209 Orange Street, Wilmington, Delaware 19801.

3. AMIP is a "debt collector" under 15 U.S.C. § 1692a(6), to wit:

    a.    AMIP regularly collects or attempts to collect debts due or owed

1

or asserted to be due or owed to another.

        b.     Specifically, AMIP represents institutional and private investors that purchase distressed residential real estate, real estate loans and mortgages that are in default. AMIP's clients include entities such as Residential Credit Opportunities Trust V-C and Residential Credit Opportunities Trust V-E.

        c.     The debts that AMIP collects and attempts to collect are obligations or alleged obligations of consumers to pay money arising out of transactions in which the money, property and services which are the subject of the transaction are primarily for personal, family, or household purposes, including the financing of consumer purchases of residential real estate.

        d.     On behalf of its institutional and private investor clients, AMIP communicates with the consumers who own distressed residential real estate and/or whose mortgages and real estate loans are in default.

        e.     When having such communications, AMIP routinely uses interstate telephone services, the internet, email and the U.S. Mail to communicate with consumers. AMIP also uses such methods to communicate with its clients and third-parties involved in its collection efforts. For example, AMIP routinely sends dunning form letters, materially similar to those attached hereto as Exhibits C, D, F and G, to consumers in an effort to collect mortgage debts on behalf of its clients.

        f.     AMIP also uses an "internet-based" asset management system that aids in its debt collection activity. *See*

http://www.amipmanagement.com/amip-technology.html (last accessed 2020-08-30).

      g.    Through its communications with consumers, AMIP collects and/or attempts to collect debts under the guise of providing homeowners with "appropriate solutions for their homeownership problems," which include, *inter alia*, offering homeowners the opportunity to "vacate" their homes and "be rid of further financial obligation" to the lenders that AMIP represents.  Such collection efforts are AMIP's attempt to ensure that consumers pay their debts "retain their home[s] and avoid foreclosure."  *See* http://www.amipmanagement.com/ (last accessed 2020-08-30).

      h.    Since 2007-2008, AMIP has collected and "resolved" more than $3 billion of debts related to distressed residential mortgages in the United States. *See* http://www.amipmanagement.com/ (last accessed 2020-08-30).

4.    Defendant Rubin Lublin, LLC ("Rubin Lublin") is a Georgia limited liability company having its principal place of business in Georgia. Rubin Lublin is subject to the jurisdiction of this Court and may be served with process by serving its registered agent, Peter Lublin, at 3145 Avalon Ridge Place, Peachtree Corners, Georgia 30071.

5.    Rubin Lublin is a "debt collector" under 15 U.S.C. § 1692a(6), to wit:

      a.    Rubin Lublin operates as a law firm.  As such, Rubin Lublin provides what it calls "Default Lender Services" to its clients.  *See*

https://rlselaw.com/practice-areas/ (last accessed 2020-08-29).

      b.    As a law firm that provides Default Lender Services to its clients, Rubin Lublin regularly collects or attempts to collect debts due or owed or asserted to be due or owed to another, to wit: through judicial and non-judicial foreclosure of residential mortgages and other types of collection activity, including dispossessory proceedings for residential landlords and loan modification/deed in lieu negotiations. *See, e.g.*, https://rlselaw.com/practice-areas/default-lender-services/foreclosure/ and https://rlselaw.com/practice-areas/default-lender-services/landlord-tenant/ (last accessed 2020-08-29).

      c.    Rubin Lublin's Default Lender Services practice entails being retained by and representing national mortgage servicers, banks, other financial institutions and individual investors in collections efforts in Georgia, Tennessee, Mississippi and Alabama. Such clients include U.S. Bank and Bank of New York Mellon.

      d.    The debts at issue in those matters are obligations or alleged obligations of consumers to pay money arising out of transactions in which the money, property and services which are the subject of the transaction are primarily for personal, family, or household purposes, including the financing of consumer purchases of residential real estate.

      e.    On a monthly and/or regular basis, Rubin Lublin is engaged in collections and non-judicial foreclosure proceedings against hundreds of residential

properties, many of which are listed on its website. *See, e.g.,* https://rlselaw.com/property-listing/ (last accessed 2020-08-29).

      f.      Rubin Lublin maintains a "team" of more than a dozen attorneys who are involved in the firm's Default Lender Services practice and who are engaged in collecting debts through foreclosures and evictions, among other collection activity. *See* https://rlselaw.com/our-team/ (last accessed 2020-08-29).

      g.      Rubin Lublin employs a staff of approximately 62 non-lawyers in its Default Lender Services practice, who are engaged in collecting debts through foreclosures and evictions, among other collection activity.

      h.      As part of its Default Lender Services practice, Rubin Lublin routinely uses interstate telephone services, the internet, email and the U.S. Mail to communicate with consumers, debts, its clients and third-parties involved in the collections and foreclosure process, as evidenced by Exhibits H and J hereto.

      i.      As part of its Default Lender Services practice, Rubin Lublin sends dunning form letters, materially similar to those attached hereto as Exhibits H and J to consumers in an effort to collect mortgage and other debts on behalf of its clients.

      j.      Rubin Lublin activity markets itself as a debt collector in its Firm Resume, which is available on the firm's website and is attached hereto as Exhibit A. Therein, Rubin Lublin lists and identifies attorneys whose practice includes debt collection.

6. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the claims asserted in this civil action arise under the laws of the United States, specifically 15 U.S.C. § 1692 *et seq.*, which is also known as the Fair Debt Collections Practices Act ("FDCPA").

7. Venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b)(2) and Local Rule 3.1B(3).

## Factual Background

8. Mr. Heagerty owns and resides in a single-family home located at 2890 Willow Wisp Way, Cumming, Georgia 30040. Mr. Heagerty has lived there since 1996.

9. On November 21, 2019, AMIP sent two letters to Mr. Heagerty, which were contained in a single envelope. The letters were received by Mr. Heagerty on or about November 29, 2019, and they were the first communications that Mr. Heagerty had ever received from AMIP. A true copy of the envelope containing those letters is attached hereto as Exhibit B.

10. The first letter stated that the new owner of Mr. Heagerty's alleged mortgage loan was an entity called Residential Credit Opportunities Trust V-C ("Trust V-C"), that Trust V-C acquired Mr. Heagerty's alleged mortgage loan on November 15, 2019, that the new servicer of Mr. Heagerty's alleged mortgage loan was an entity called FCI Lender Services, Inc. ("FCI"), that Trust V-C had "programs" that would allow Mr. Heagerty to "regain equity" in his home and that

AMIP had "programs" that would allow Mr. Heagerty to "vacate" his home and "be rid of further financial obligation" to Trust V-C. The letter also expressly stated that it was "an attempt to collect a debt" and that "[a]ny information obtained will be used for that [collection] purpose." The letter was signed by AMIP's "CEO," Mr. Ron McMahan. A true copy of the letter (the "First Trust V-C Letter") is attached hereto as Exhibit C.

11. The second letter informed Mr. Heagerty that ownership of his alleged mortgage loan had been transferred to Trust V-C, that Trust V-C and AMIP work to assist homeowners with their "homeownership problems," and that FCI was the new servicer for Mr. Heagerty's alleged mortgage loan. The letter also expressly stated that it was "an attempt to collect a debt" and that "[a]ny information obtained will be used for that [collection] purpose." The letter was signed by AMIP's "CEO," Mr. Ron McMahan. A true copy of the letter (the "Second Trust V-C Letter") is attached hereto as Exhibit D.

12. Neither the First Trust V-C Letter nor the Second Trust V-C Letter:

    a. Informed Mr. Heagerty of the amount of his alleged debt to Trust V-C.

    b. Contained a statement that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."

    c. Contained a statement that if "the consumer notifies the debt

7

collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector."

   d. Contained a statement that "upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

  13. The information described in the preceding Paragraph was not provided to Mr. Heagerty within five days of his receipt of the First and Second Trust V-C Letters either.

  14. AMIP sent the First and Second Trust V-C letters to Mr. Heagerty in connection with the collection of an alleged debt, specifically the mortgage debt allegedly owed by Mr. Heagerty to Trust V-C, and Mr. Heagerty understood them to be such.

  15. On January 14, 2020, AMIP sent two more letters to Mr. Heagerty, which were both contained in a single envelope.  Although those letters were dated November 21, 2019, they were not actually mailed to Mr. Heagerty until seven weeks later, *i.e.* on January 14, 2020, as proven by the postmark on the envelope containing the letters, a true copy of which is attached hereto as Exhibit E.  Those letters were received by Mr. Heagerty no earlier than January 22, 2020.

16. In the first of the letters that Mr. Heagerty received in January 2020, AMIP stated that the new owner of Mr. Heagerty's alleged mortgage loan was an entity called Residential Credit Opportunities Trust V-E ("Trust V-E"), that Trust V-E acquired Mr. Heagerty's alleged mortgage loan on November 15, 2019, that the new servicer of Mr. Heagerty's alleged mortgage loan was FCI, that Trust V-E had programs that would allow Mr. Heagerty to "regain equity" in his home and that AMIP had "programs" that would allow Mr. Heagerty to "vacate" his home and "be rid of further financial obligation" to Trust V-E. The letter also expressly stated that it was "an attempt to collect a debt" and that "[a]ny information obtained will be used for that [collection] purpose." The letter was signed by AMIP's "CEO," Mr. Ron McMahan. A true copy of the letter (the "First Trust V-E Letter") is attached hereto as Exhibit F.

17. In the second of the letters that Mr. Heagerty received in January 2020, AMIP stated that ownership of Mr. Heagerty's alleged mortgage loan had been transferred to Trust V-E on November 15, 2019, that Trust V-E and AMIP work to assist homeowners with their "homeownership problems," and that FCI was the new servicer for Mr. Heagerty's alleged mortgage loan. The letter also expressly stated that it was "an attempt to collect a debt" and that "[a]ny information obtained will be used for that [collection] purpose." The letter was signed by AMIP's "CEO," Mr. Ron McMahan. A true copy of the letter (the "Second Trust V-E Letter") is attached hereto as Exhibit G.

18. Neither the First Trust V-E Letter nor the Second Trust V-E Letter:

    a. Informed Mr. Heagerty of the amount of his alleged debt to Trust V-E.

    b. Contained a statement that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."

    c. Contained a statement that if "the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector."

    d. Contained a statement that "upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

19. The information described in the preceding Paragraph was not provided to Mr. Heagerty within five days of his receipt of the First and Second Trust V-E Letters either.

20. AMIP sent the First and Second Trust V-E letters to Mr. Heagerty in connection with the collection of an alleged debt, specifically the mortgage debt allegedly owed by Mr. Heagerty to Trust V-E, and Mr. Heagerty understood them

to be such.

21. On February 13, 2020, Rubin Lublin sent a letter to Mr. Heagerty that was entitled "Notice Pursuant to the Fair Debt Collection Practices Act (If Applicable)," in which Rubin Lublin:

    a. Stated that Rubin Lublin represented Wilmington Savings Fund Society, FSB.

    b. Referenced a promissory note allegedly signed by Mr. Heagerty.

    c. Stated that the balance or "Amount of Debt" due on that alleged promissory note was $254,687.69.

    d. Explained how Mr. Heagerty could bring the alleged note "current," implying that the note was not current and in default.

    e. Stated that "This letter is notice to the extent the Fair Debt Collection Practices Act (the "FDCPA") applies.

    f. Stated that "Should the FDCPA apply, please be advised that this firm [Rubin Lublin] is acting as a debt collector attempting to collect a debt and any information obtained will be used for that purpose."

    g. Threatened to foreclose on Mr. Heagerty's home.

    h. Threatened other "collection activity" that "may" take place in less than 30 days.

22. A true copy of the letter described in the preceding paragraph (the "RL FDCPA Notice") is attached hereto as Exhibit H.

23.     Rubin Lublin sent the RL FDCPA Notice to Mr. Heagerty in connection with the collection of an alleged debt, specifically the mortgage debt allegedly owed by Mr. Heagerty to Wilmington Savings Fund Society, FSB, and Mr. Heagerty understood it to be such.

24.     The RL FDCPA Notice was also confusing and ambiguous because, on the one hand, it contained language implying that Mr. Heagerty's alleged debt was in default and, on the other hand, contained a litany of disclaimers regarding the applicability (or non-applicability) of the FDCPA and Rubin Lublin's intent regarding collecting Mr. Heagerty's alleged debt.

25.     Under Georgia law, Rubin Lublin was not required to send the RL FDCPA Notice in order to foreclose on Mr. Heagerty's home.

26.     Furthermore, Rubin Lublin was not legally able to foreclose on Mr. Heagerty's home because:

    a.     The Notice of Sale Under Power that Rubin Lublin published regarding Mr. Heagerty's home contained the street address, city, and ZIP Code of Mr. Heagerty's home, but that information was not "set out in bold type," as required by O.C.G.A. § 44-14-162.  A true copy of the text of that advertisement (the "April Notice of Sale") is attached hereto as Exhibit I.

    b.     The April Notice of Sale also incorrectly identified AMIP as the "entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor" as required by O.C.G.A. § 44-14-162.2.  In a telephone

12

call with Mr. Heagerty, AMIP's Chief Executive Officer, Ron McMahan, admitted that AMIP did not have such authority.

27. On May 22, 2020, Rubin Lublin sent Mr. Heagerty a letter that was entitled "Notice Pursuant to the Fair Debt Collection Practices Act (If Applicable)," in which Rubin Lublin,

    a. Stated that Rubin Lublin represented Wilmington Savings Fund Society, FSB.

    b. Referenced a promissory note allegedly signed by Mr. Heagerty.

    c. Stated that the balance or "Amount of Debt" due on that alleged promissory note was $254,687.69.

    d. Explained how Mr. Heagerty could bring the alleged note "current," implying that the note was not current and in default.

    e. Stated that "This letter is notice to the extend the Fair Debt Collection Practices Act (the "FDCPA") applies.

    f. Stated that "Should the FDCPA apply, please be advised that this firm [Rubin Lublin] is acting as a debt collector attempting to collect a debt and any information obtained will be used for that purpose."

    g. Threatened to foreclose on Mr. Heagerty's home.

    h. Threatened other "collection activity" that "may" take place in less than 30 days.

28. A true copy of the letter described in the preceding paragraph (the

"Second RL FDCPA Notice") is attached hereto as Exhibit J.

29.     Rubin Lublin sent the Second RL FDCPA Notice to Mr. Heagerty in connection with the collection of an alleged debt, specifically the mortgage debt allegedly owed by Mr. Heagerty to Wilmington Savings Fund Society, FSB, and Mr. Heagerty understood it to be such.

30.     The Second RL FDCPA Notice was also confusing and ambiguous because, on the one hand, it contained language implying that Mr. Heagerty's alleged debt was in default and, on the other hand, contained a litany of disclaimers regarding the applicability (or non-applicability) of the FDCPA and Rubin Lublin's intent regarding collecting Mr. Heagerty's alleged debt.

31.     Under Georgia law, Rubin Lublin was not required to send the Second RL FDCPA Notice in order to foreclose on Mr. Heagerty's home.

32.     Furthermore, Rubin Lublin was not legally able to foreclose on Mr. Heagerty's home because:

    a.     The Notice of Sale Under Power that Rubin Lublin published regarding Mr. Heagerty's home contained the street address, city, and ZIP Code of Mr. Heagerty's home, but that information was not "set out in bold type," as required by O.C.G.A. § 44-14-162.  A true copy of the text of that advertisement (the "July Notice of Sale") is attached hereto as Exhibit K.

    b.     The July Notice of Sale also incorrectly identified AMIP as the "entity who shall have full authority to negotiate, amend, and modify all terms of

the mortgage with the debtor" as required by O.C.G.A. § 44-14-162.2.  In a telephone call with Mr. Heagerty, AMIP's Chief Executive Officer, Ron McMahan, admitted that AMIP did not have such authority.

33. Because of Defendants' continuing efforts to collect the debt allegedly owed by Mr. Heagerty and Rubin Lublin's repeated threats to foreclose on Mr. Heagerty's home, on July 2, 2020, Mr. Heagerty filed an Emergency Petition for a Temporary Restraining Order against Wilmington Savings Fund Society, FSB and Residential Credit Opportunities Trust, V-E in the Superior Court of Forsyth County, State of Georgia, which is Civil Action File No. 2-CV-1063-2 (the "TRO Case").

34. On July 7, 2020, the Hon. David L. Dickinson, granted Mr. Heagerty's motion for a temporary restraining order, and restrained the defendants in that case from proceeding with a foreclosure sale of Mr. Heagerty's home, which had been scheduled for that same day.  A true copy of the order granting the TRO is attached hereto at Exhibit L.

35. As a result of the actions of AMIP and Rubin Lublin, Mr. Heagerty has suffered actual damages, including without limitation severe emotional distress, which includes anxiety, panic attacks, inability to sleep, loss of appetite, loss of interest in hobbies and inability to focus at work.

### Count 1 – Violation of 15 U.S.C. § 1692g by AMIP

36. AMIP violated 15 U.S.C. § 1692g by failing to provide Mr. Heagerty with the information required by subsection (a) of that code section in either the First or Second Trust V-C Letters or within five days thereof.

37. AMIP violated 15 U.S.C. § 1692g by failing to provide Mr. Heagerty with the information required by subsection (a) of that code section in either the First or Second Trust V-E Letters or within five days thereof.

38. As a proximate result of AMIP's violations of 15 U.S.C. § 1692g, Mr. Heagerty has suffered actual damages, as alleged in Paragraph 35 above, and is entitled to recover such damages in an amount to be proven at trial pursuant to 15 U.S.C. § 1692k(a)(1).

39. As a result of AMIP's violations of 15 U.S.C. § 1692g, Mr. Heagerty is also entitled to recover statutory damages in the amount of $1,000 pursuant to 15 U.S.C. § 1692k(a)(2).

40. As a result of AMIP's violations of 15 U.S.C. § 1692g, Mr. Heagerty is entitled to recover the costs of this action and his reasonable attorneys fees in an amount determined by the Court pursuant to 15 U.S.C. § 1692k.

### Count 2 – Violation of 15 U.S.C. § 1692e by Rublin Lublin

41. Rubin Lublin violated 15 U.S.C. § 1692e by threatening to take actions that could not legally be taken. Specifically, Rubin Lublin could not legally foreclose on Mr. Heagerty's home because the April and July Notices of Sale were defective.

42. As a proximate result of Rubin Lublin's violations of 15 U.S.C. § 1692e, Mr. Heagerty has suffered actual damages, as alleged in Paragraph 35 above, and is entitled to recover such damages in an amount to be proven at trial pursuant to 15 U.S.C. § 1692k(a)(1).

43. As a result of Rubin Lublin's violations of 15 U.S.C. § 1692e, Mr. Heagerty is also entitled to recover statutory damages in the amount of $1,000 pursuant to 15 U.S.C. § 1692k(a)(2).

44. As a result of Rubin Lublin's violations of 15 U.S.C. § 1692e, Mr. Heagerty is entitled to recover the costs of this action and his reasonable attorneys fees in an amount determined by the Court pursuant to 15 U.S.C. § 1692k.

WHEREFORE, Mr. Heagerty respectfully prays that the Court:

1. Issue process to Defendants AMIP and Rubin Lublin;

2. Conduct a trial by jury of all claims asserted herein;

3. Enter judgment in favor of Mr. Heagerty as consistent with the jury's verdict; and

4. Grant Mr. Heagerty such other and further relief as it deems just and necessary.

This 1st day of September, 2020.

| | |
|---|---|
| **MCRAE BERTSCHI & COLE LLC**<br>1872 Independence Square Suite D<br>Dunwoody, Georgia 30338 | */s Craig E. Bertschi*<br>Craig E. Bertschi<br>Georgia Bar No. 055739<br>ceb@mcraebertschi.com<br>678.999.1102<br><br>Charles J. Cole<br>Georgia Bar No. 176704<br>cjc@mcraebertschi.com<br>678.999.1105<br><br>*Counsel for Plaintiff* |