IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GLENN HEAGERTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | 1:20-cv-02727-SCJ-RGV |
| AMIP MANAGEMENT, LLC and | ) | |
| RUBIN LUBLIN, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b) and Local Rule 7, Plaintiff Glenn Heagerty responds to Defendants' Motion to Dismiss the First Amended Complaint (the "FAC" or "Complaint") [Docket #20] as follows:

## I.    INTRODUCTION

This is a Fair Debt Collection Practices Act ("FDCPA") case.  Mr. Heagerty is a consumer, a resident of the State of Georgia and a homeowner, who resides at 2890 Willow Wisp Way, Cumming, Georgia 30040.  FAC [Docket #17], ¶¶ 1 and 8.

Between November 21, 2019 and January 14, 2020, Defendant AMIP Management, LLC ("AMIP") sent four letters to Mr. Heagerty regarding his mortgage loan.  FAC, ¶¶ 9 and 15 and Exhibits B – G.  Mr. Heagerty alleges that AMIP is a "debt collector," that the four letters AMIP sent him constituted

"collection activity" and that AMIP violated 15 U.S.C. § 1692g(a) by failing to provide him with the information required by that code section.  FAC, ¶¶ 36 – 37.

In February and May, 2020, Defendant Rubin Lublin, LLC ("RL") sent letters to Mr. Heagerty in which it threatened to foreclose on his home.  FAC, ¶¶ 21 and 27 and Exhibits H and J.  However, the Notices of Sale that RL published and sent to Mr. Heagerty in compliance with Georgia law were defective, making it impossible for RL to legally foreclosure on Mr. Heagerty's home.  Mr. Heagerty alleges that RL violated 15 U.S.C. § 1692e(5) by threatening to take an action that could not legally be taken.  FAC, ¶ 41.

The operative complaint in this case is the First Amended Complaint, which is Docket #17.  On September 15, 2020, Defendants filed a consolidated Motion to Dismiss the FAC, which is Docket #20.  Therein, AMIP argues that the Complaint fails to state a claim because Mr. Heagerty has not alleged sufficient facts to demonstrate that AMIP (1) is a "debt collector" or (2) engaged in any "collection activity" with respect to him.  For its part, RL argues that the Complaint fails to state a claim because the Notices of Sale were not defective and did not legally preclude the scheduled foreclosure sales.  As explained below, the Complaint does state claims against AMIP and RL, and Defendants' Motion to Dismiss should be denied.

II.   <u>ARGUMENT AND CITATION OF AUTHORITIES</u>

The legal standard governing motions to dismiss for failure to state a claim is well-known to the Court and warrants only brief discussion here.  *See, e.g., Roberts v. Citimortgage, Inc.*, No. 1:14-cv-00305-CAP-RGV, 2014 U.S. Dist. LEXIS 189303 at *12-14 (N.D. Ga. May 16, 2014).  In his Complaint and under Fed. R. Civ. P. 8(a)(2), Mr. Heagerty must set forth "a short and plain statement of the claim showing that [he] is entitled to relief."  *Id.* at *13.  While the Complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," it is not required to contain "detailed factual allegations …."  *Id.*  When evaluating Defendants' current Motion, the Court must accept the allegations of the Complaint as true and construe those allegations in Mr. Heagerty's favor.  *Id.*  As explained below, Mr. Heagerty's Complaint easily clears these threshold requirements and "contain[s] 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* at *14, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A.   <u>Mr. Heagerty has alleged sufficient facts to plausibly assert that AMIP is a "debt collector."</u>

 On pages 11 - 13 of Defendant's Brief, AMIP argues that Mr. Heagerty has failed to state a claim that AMIP is a "debt collector."  That argument is patently meritless.  In his Complaint, Mr. Heagerty alleges that:

- AMIP represents institutional and private investors who purchase mortgage loans that are in default.  FAC, ¶ 3a.

- AMIP communicates with consumers regarding their defaulted mortgage loans using form letters sent *via* U.S. Mail.  FAC, ¶¶ 3d and 3e.

- In those form letters, AMIP attempts to: (1) obtain payment of consumers' defaulted mortgage loans by offering alternative payment plans that will allow consumers to "retain their home[s] and avoid foreclosure" or (2) liquidate consumer's defaulted mortgage loans by offering them the opportunity to "vacate" their homes and "be rid of further financial obligation" to the lenders that AMIP represents.  FAC, ¶ 3g.

- AMIP's letters contain admissions that it is a debt collector.  FAC, ¶¶ 10, 11, 16 and 17.

- AMIP sent such form letters to Mr. Heagerty as part of its efforts to collect and/or liquidate his mortgage loan.  FAC, ¶¶ 9 and 15 and Exhibits C, D, F and G.

- Over the last 13 years, AMIP has collected or "resolved" defaulted mortgage loans totaling over $3 billion.  FAC, ¶ 3h.

These allegations, when construed in the light most favorable to Mr. Heagerty, make out a "plausible" case that AMIP is a debt collector.

Contrary to the arguments on page 12 of Defendant's Brief, Mr. Heagerty's allegations that AMIP is a debt collector are not "conclusory." A conclusory allegation is one that merely recites the elements of a cause of action and does not offer any factual support. For example, in *Muhammad v. Ocwen Loan Servicing*, No. 1:17-CV-0964-LMM-JSA, 2018 U.S. Dist. LEXIS 239403 at *47 (N.D. Ga. January 23, 2018), this Court granted a defendant's motion to dismiss where the complaint contained "only a conclusory allegation that Ocwen is a 'debt collector' under the FDCPA, without factual support." In contrast, Mr. Heagerty's allegations that AMIP is a debt collector are detailed, specific and cite supporting evidence.

Furthermore, AMIP's argument that the information on its website does not establish that it is a debt collector is a straw man. Mr. Heagerty's allegations regarding AMIP's "internet-based" asset management system are not intended to comprehensively demonstrate that AMIP is a debt collector. Rather, those allegations are merely intended to provide factual support for the allegation that AMIP uses an "instrumentality of interstate commerce," *i.e.* the internet, in connection with its debt collection activities, which is one of the elements of the definition of "debt collector" set forth in 15 U.S.C. § 1692a(6).

B.     <u>Mr. Heagerty has alleged sufficient facts to plausibly assert that he was the object of "collection activity" by AMIP.</u>

On pages 13 - 14 of Defendants' Brief, AMIP argues that Mr. Heagerty has not sufficiently alleged that he was the object of "collection activity" by AMIP. That argument is without merit for numerous reasons.

First, when read collectively and in context, it is "plausible" that AMIP was attempting to collect Mr. Heagerty's mortgage loan.  Over the course of seven weeks, AMIP sent Mr. Heagerty four letters regarding his mortgage loan.  FAC, ¶¶ 9 and 15 and Exhibits C, D, F and G.  The letters expressly reference Mr. Heagerty's "mortgage loan" and his "homeownership problems."  FAC, Exhibits D and G.  The letters suggest that Mr. Heagerty may "wish to vacate" his home and "be rid of further financial obligation" on his mortgage.  FAC, Exhibits C and F.  Alternatively, the letters suggest that Mr. Heagerty may have the opportunity to "regain equity" in his home through a program designed "to fit [his] current financial needs," *i.e.* a payment plan.  *Id*.  If these statements left any doubt as to AMIP's intent in sending the letters to Mr. Heagerty, that doubt was erased by the legend at the bottom of each letter, which unambiguously states that: "This is an attempt to collect a debt. Any information obtained will be used for that purpose." FAC, ¶¶ 10, 11, 16 and 17 and Exhibits C, D, F and G.  Based on these facts, Mr. Heagerty reasonably or "plausibly" believed that AMIP's letters were an attempt to collect on his mortgage loan.  FAC, ¶¶ 14 and 20.

Second, in its letters to Mr. Heagerty, AMIP makes it clear that it is not the owner or the servicer of Mr. Heagerty's mortgage loan.   Ownership of Mr. Heagerty's mortgage loan is ascribed to an entity called Residential Credit Opportunities Trust V-C in AMIP's November 21, 2019 letters and an entity called Residential Credit Opportunities Trust V-E in AMIP's January 14, 2020 letters. FAC, Exhibits C, D, F and G.   All four of the letters identify FCI Lender Services, Inc. as the servicer of Mr. Heagerty's mortgage loan.   *Id*.   Since AMIP was not the owner or the servicer of Mr. Heagerty's loan, it is plausible that AMIP was a debt collector attempting to obtain payment on Mr. Heagerty's mortgage loan, particularly in light of the legend at the bottom of AMIP's letters, which expressly stated that "This is an attempt to collect a debt."   *Id*.

Third, AMIP's argument is premised on an overly restrictive interpretation of the phrase "collection activity."   The FDCPA is a consumer protection statute and should be construed broadly in order to best serve Congress' intent.   *Agrelo v. Affinity Management Services, LLC*, 841 F.3d 944, 950 fn. 11 (11tth Cir. 2016). Therefore, contrary to the arguments at the bottom of page 13 of Defendant's Brief, it is not necessary that AMIP's letters to Mr. Heagerty expressly use the words "pay," "demand" or "fees" in order to qualify as collection activity.   The FDCPA only requires that the debt collector attempt "to obtain payment or liquidation" of a debt," which is clearly what AMIP did when it suggested that, *inter alia*, Mr.

Heagerty "vacate" his home and "be rid of further financial obligation" on his mortgage loan.  *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995), *quoting* Black's Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it … .").

Fourth, AMIP's argument that its letters are merely "informational" in nature "wrongly assumes that a communication cannot have dual purposes." *Reese v. Ellis, Painter, Ratterree & Adams LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012). There is no question that AMIP's letters informed Mr. Heagerty of the new owners and servicer of his mortgage loan.  However, as noted above, the letters also expressly state that they are "an attempt to collect a debt," reference Mr. Heagerty's "homeownership problems" and state that he has options to address those problems, which include (1) vacating his home to "be rid of further financial obligation" on his mortgage or (2) reaching new payment terms with his creditors that "fit [his] current financial needs" and would allow him to "regain equity in [his] home."  FAC, Exhibits C and F.  In light of these facts, it is plausible that AMIP was not merely providing Mr. Heagerty with information regarding his mortgage loan, but also attempting to "obtain payment or liquidation" of that loan.  *See Heintz*, 514 U.S. at 294 (attempt to liquidate a debt is collection activity).

Finally, AMIP's argument that the legend at the bottom of its letters to Mr. Heagerty is irrelevant (and nothing more than an attempt to "err on the side of

caution" in the event it is found to be a "debt collector") is based on an incorrect reading of the applicable authorities.  While such an admission may not be dispositive of the issue, courts in this circuit and district routinely point to the inclusion of such language in communications from debt collectors and similar admissions by a defendant as relevant evidence of collection activity.  *See, e.g., Reese*, 678 F.3d at 1217; *Johnson v. Fay Servicing, LLC*, No. 1:17-CV-02513-CC-JCF, 2018 U.S. Dist. LEXIS 221432 at *31 (N.D. Ga. July 2, 2018); *Consumer Financial Protection Bureau v. Universal Debt & Payment Solutions, LLC*, No. 1:15-CV-0859-RWS, 2019 U.S. Dist. LEXIS 46492 at *35 (N.D. Ga. 2019) ("While a company's own description of its operations might not be conclusive evidence of debt collecting …, it is still highly relevant.").

C.     Mr. Heagerty's Complaint states a claim against Defendant Rubin Lublin.

In Count 2 of his Complaint, Mr. Heagerty asserts that Defendant Rubin Lublin violated 15 U.S.C. § 1692e(5) by threatening to foreclose on his home when it could not legally do so.  FAC, ¶ 41.  Specifically, Mr. Heagerty alleges that RL could not foreclose on his home because the Notices of Sale that RL published in advance of the scheduled foreclosures and provided to Mr. Heagerty were defective, to wit: (1) the street address, city and ZIP Code of Mr. Heagerty's home as set forth in the published Notices of Sale were not "set out in bold type," as required by O.C.G.A. § 44-14-162 and (2) the Notices of Sale that RL sent to Mr.

Heagerty incorrectly identified AMIP as the "entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor," in violation of O.C.G.A. § 44-14-162.2.  FAC, ¶ 32.

On pages 16-17 of Defendants' Brief, RL argues that its Notices of Sale were not defective because (1) the "minimum requirements" for foreclosure in Georgia are set forth in O.C.G.A. § 9-13-140 and (2) the defects identified in the Complaint (failure to put the street address in bold type and failure to correctly identify the entity having the authority to negotiate the mortgage) are not imposed by O.C.G.A. § 9-13-140, but by two other code sections, *i.e.* O.C.G.A. §§ 44-14-162.2 and 44-14-162(a).  Therefore, according to RL, it was legally able to proceed with foreclosure on Mr. Heagerty's home, notwithstanding these defects.   That argument is demonstrably false for several reasons.

First, RL has already litigated this issue … and lost.  As explained in Paragraphs 33 – 34 of the Complaint, on July 2, 2020, Mr. Heagerty filed an Emergency Petition for Temporary Restraining Order in the Superior Court of Forsyth County, seeking to enjoin RL's threatened foreclosure on his home.  FAC, ¶ 32.  Therein, Mr. Heagerty "challenge[d] the legality of Defendants' right to sell the Property on multiple grounds."  FAC, Exhibit L, p. 1.  On July 7, the Hon. David L. Dickinson granted Mr. Heagerty's Petition and enjoined the foreclosure of Mr. Heagerty's home.  *Id*.  In his order, Judge Dickinson held that RL's Notices

of Sale were defective because the address of Mr. Heagerty's home was not in bold

type and "there is a substantial likelihood that Plaintiff will prevail on the merits

of this issue." *Id.*, p. 3.

Second, RL's argument is based on a materially incomplete quotation from

O.C.G.A. § 44-14-162(a).   On page 16 of Defendants' Brief, RL quotes the first

sentence of that code section, but, inexplicably, omits the second sentence.   For

purposes of evaluating RL's argument, the Court should consider both sentences,

which provide that:

> (a) No sale of real estate under powers contained in mortgages, deeds, or other lien contracts shall be valid unless the sale shall be advertised and conducted at the time and place and in the usual manner of the sheriff's sales in the county in which such real estate or a part thereof is located and unless notice of the sale shall have been given as required by Code Section 44-14-162.2. *If the advertisement contains the street address, city, and ZIP Code of the property, such information shall be clearly set out in bold type.*

(Red type and emphasis added.)   This second sentence of O.C.G.A. § 44-14-162(a),

which was quoted by Judge Dickinson in his July 7 order, is unambiguous,

mandatory and unquestionably requires that address information in notices of sale

"be clearly set out in bold type."   Since the Notices of Sale at issue in this case failed

to comply with that requirement, they were patently defective and made it

impossible for RL to legally foreclose on Mr. Heagerty's home.

Third, with respect to the requirement that a notice of sale identify the entity

with authority to negotiate the mortgage, RL's argument is contrary to the express

requirements of Georgia law.  O.C.G.A. § 44-14-162.2(a) uses the mandatory term "shall," and states that "[s]uch notice shall be in writing, [and] shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor … ."  The Georgia Supreme Court construes O.C.G.A. § 44-14-162.2(a) according to its "plain language," holding that the mortgagor must be given notice of the identity of the entity with the authority to negotiate the mortgage, regardless of whether that entity is the holder of the security deed or "someone other than the deed holder or the noteholder, such as an attorney or servicing agent … ."  *You v. JP Morgan Chase Bank, N.A.*, 293 Ga. 67, 74-75 (2013).  "The statute requires no more and no less."  *Id*. at 75; *see also Mbigi v. Wells Fargo Home Mortgage*, 336 Ga. App. 316, 319-321 (2016) (reversing trial court's decision to dismiss plaintiff's wrongful foreclosure claim where the defendant's notice of sale failed to comply with O.C.G.A. § 44-14-162.2(a)).  Therefore, this Court should also construe O.C.G.A. § 44-14-162.2(a) according to its plain language and reject RL's invitation to dispense with the important consumer protections contained therein.

Finally, the cases cited by RL on page 16 of Defendants' Brief are easily distinguished.  In *Diplomat Construction, Inc. v. State Bank of Texas*, 314 Ga. App. 889 (2012), the Georgia Court of Appeals held that evidence of an error in the metes and bounds description of the foreclosed property did not render the published

notice of sale defective because the description of the property contained in the published notice matched the description contained in the security deed. *Id*. at 894-95. No party raised an issue regarding the typeface contained in the advertised notice of sale or the identity of the entity with authority to negotiate the debt, and the court issued no ruling on those requirements. Similarly, in *Southeast Timberlands, Inc. v. Security National Bank*, 220 Ga. App. 359 (1996), the notice of sale overstated the amount of debt secured by the foreclosed property, but was otherwise accurate. *Id*. at 359. The court held that the error was immaterial in the context of a challenge to a confirmation sale and the issues of typeface or identity of the entity with authority requirements was never raised or addressed. *Id*. at 360. On this point, it is also worth noting that RL's interpretation of the *Diplomat Construction* and *Southeast Timberlands* cases is contrary to Georgia's long-standing principles of statutory construction, which require that all words in a statute be given meaning. *See Latham v. Stewart*, 140 Ga. 188, 195 (1913) ("It is one of the fundamental rules of statutory construction that the court should presume that the legislature intended for all the words of the statute to have some meaning.")

## III.   CONCLUSION

For the reasons set forth above, Mr. Heagerty respectfully requests that the Court deny Defendants' Motion to Dismiss the First Amended Complaint.

This 23rd day of September, 2020.

**MCRAE BERTSCHI & COLE LLC**        /s/ Craig E. Bertschi
1872 Independence Square, Suite D        Craig E. Bertschi
Dunwoody, Georgia 30338        Georgia Bar No. 055739
ceb@mcraebertschi.com
678.999.1102

Charles J. Cole
Georgia Bar No. 176704
cjc@mcraebertschi.com
678.999.1105

*Counsel for Plaintiff*