## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GLENN HEAGERTY,                    :
                                   :
            Plaintiff,             :
                                   :   CIVIL ACTION FILE NO.
v.                                 :
                                   :   1:20-cv-02727-SCJ-RGV
AMIP MANAGEMENT, LLC, *et al.*,    :
                                   :
            Defendants.            :

## FINAL REPORT AND RECOMMENDATION

Plaintiff Glenn Heagerty ("Heagerty") has filed an amended complaint in this action against AMIP Management, LLC ("AMIP") and Rubin Lublin, LLC ("RL"), jointly referred to as "defendants," alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  [Doc. 17].[1] Defendants have filed a motion to dismiss the amended complaint, [Doc. 20], which Heagerty opposes, [Doc. 24], and defendants have filed a reply in support of their motion, [Doc. 26].  For the reasons that follow, it is **RECOMMENDED** that defendants' motion to dismiss, [Doc. 20], be **GRANTED**.

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of a series of communications pertaining to Heagerty's mortgage loan for the real property located at 2890 Willow Wisp Way, Cumming, Georgia (the "property").  See [Doc. 17 ¶¶ 8-34].[2]  Heagerty owns the property and has resided there since 1996.  [Id. ¶ 8].  On November 21, 2019, AMIP sent two letters to Heagerty (the "November AMIP letters") explaining that on November 15, 2019, ownership of his mortgage loan had been transferred to Residential Credit Opportunities Trust V-C,[3] a "private real estate investment company that purchases mortgages and residential real estate," which "work[s] closely with [its] [l]oan [s]ervicer . . ., mortgage banks, and third party service providers to provide [its]   homeowners   cost   effective   and   appropriate   solutions   for   their

---

[2] The factual background is taken from the pleadings and exhibits and does not constitute findings of fact by the Court.  Heagerty has attached certain exhibits to his amended complaint, [Docs. 17-1 through 17-12], and these documents are considered part of the pleading, see Owens v. Metro. Life Ins. Co., Civil Action No. 2:14-CV-00074-RWS, 2015 WL 1651125, at *3 (N.D. Ga. Apr. 14, 2015) (citing Fed. R. Civ. P. 10(c)) ("[D]ocuments attached to a complaint are considered part of the complaint."), and may therefore be considered by the Court in ruling on defendants' motion to dismiss, Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016) (citation omitted) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

[3] One of the letters noted that this transfer had not been publicly recorded.  [Doc. 17-4].

homeownership problems"; that Residential Credit Opportunities Trust V-C was not the servicer of Heagerty's loan; that the new servicer of Heagerty's loan would be FCI Lender Services, Inc. ("FCI"), and that he would soon receive a letter from FCI notifying him that it was the new servicer of his loan; that FCI could be contacted by telephone to confirm that Residential Credit Opportunities Trust V-C was the new owner of his loan or to answer any questions; and that "Residential Credit Opportunities Trust V-C ha[d] many programs designed to fit [his] current financial needs and to regain equity in [his] home," as well as "programs available . . . should [he] wish to vacate [his] property and be rid of further financial obligation." [Id. ¶¶ 9-11 (citations omitted); Doc. 17-2; Doc. 17-3; Doc. 17-4]. Each letter was signed by Ron McMahan, the Chief Executive Officer ("CEO") of AMIP, and included bold language at the bottom stating, "**This is an attempt to collect a debt. Any information obtained will be used for that purpose.**" [Doc. 17 ¶¶ 10-11; Doc. 17-3; Doc. 17-4]. Heagerty received these letters on November 29, 2019.[4] [Doc. 17 ¶ 9]. On January 14, 2020, AMIP sent two more letters to Heagerty (the "January AMIP letters") that were nearly identical to the November letters,[5] except

---

[4] Heagerty asserts that this was the first communication he had ever received from AMIP. [Doc. 17 ¶ 9].

[5] Although these letters were dated November 21, 2019, they were postmarked as having been mailed on January 14, 2020. [Doc. 17 ¶ 15; Doc. 17-5; Doc. 17-6; Doc. 17-7].

that the name of the entity that had acquired his loan via transfer was instead identified as Residential Credit Opportunities Trust V-E.[6]  [Id. ¶¶ 15-17; Doc. 17-5]; compare [Docs. 17-6 & 17-7], with [Docs. 17-3 & 17-4].  Heagerty received these letters "no earlier than January 22, 2020."  [Doc. 17 ¶ 15].

On February 13, 2020, RL sent a letter to Heagerty titled "Notice Pursuant to [FDCPA] (If Applicable)" (the "February RL letter").  [Id. ¶ 21; Doc. 17-8 at 1 (emphasis omitted)].  This letter specified that it pertained to a note and security deed from Heagerty to the original lender, Mortgage Electronic Registration Systems, Inc., as nominee for Capital One Home Loans, LLC, and a debt in the amount of $254,687.69, and explained that RL was a "law firm represent[ing] Wilmington Savings Fund Society, FSB, as [o]wner [t]rustee of the Residential Credit Opportunities Trust V-E, successor in interest to the [o]riginal [l]ender." [Doc. 17-8 at 1].  It was sent to "advise [Heagerty] that [RL] ha[d] been retained to non-judicially foreclose the [l]oan," and warned that unless he notified RL "within thirty [] days after receipt of this letter that the validity of this debt, or any portion of it, [was] disputed, [RL would] assume that the debt [was] valid," but if he did

---

[6] These letters also noted that the transfer to Residential Credit Opportunities Trust V-E was not publicly record.  [Doc. 17-7].

"notify [RL] in writing of a dispute, [it would] obtain verification of the debt and mail it to [him]."  [Id.].[7]

RL also published a Notice of Sale Under Power ("April Notice of Sale"), advertising a foreclosure sale of the property scheduled for the first Tuesday in April 2020 pursuant to the "[p]ower of [s]ale contained in th[e ] [s]ecurity [d]eed," which had been "last sold, assigned and transferred to Wilmington Savings Fund Society, FSB as [o]wner [t]rustee of the Residential Credit Opportunities Trust V-E," because Heagerty had defaulted on the mortgage loan.  [Doc. 17-9].  The April Notice of Sale provided the address for the property in regular font and noted that

---

[7] The February RL letter also provided, in pertinent part:

> **This notice is not a demand for payment or possession.  Our client is seeking only to enforce its rights against the above-referenced property pursuant to the [l]oan and not against you personally. . . . This notice relates solely to an enforcement of rights with respect to the above-referenced property.**
>> . . . .
>> This letter is notice to the extent the [FDCPA] applies.  Nothing contained herein or in future notices shall be deemed an admission that the FDCPA applies to this firm's representation of the aforementioned creditor.
>> . . . .
>> Should the FDCPA apply, please be advised that this firm is acting as a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

[Doc. 17-8 at 2].

AMIP was the "entity having full authority to negotiate, amend or modify all terms of the loan[.]"  [Id.]; see also [Doc. 17 ¶ 26].[8]

On May 22, 2020, RL sent another letter to Heagerty titled "Notice Pursuant to [FDCPA] (If Applicable)" (the "May RL letter"), [Doc. 17-10 at 1 (emphasis omitted)], which was nearly identical to its February letter, aside from the date and the amount of debt, which was identified as $259,654.54, compare [Doc. 17-10], with [Doc. 17-8].  RL also published another Notice of Sale Under Power ("July Notice of Sale"), advertising a foreclosure sale of the property scheduled for the first Tuesday in July 2020 pursuant to the notice of sale contained in the security deed that had been transferred to Wilmington Savings Fund Society, FSB, as owner trustee of the Residential Credit Opportunities Trust V-E, and again identifying the property address in regular font and AMIP as the "entity having full authority to negotiate, amend or modify all terms of the loan[.]"  [Doc. 17-11]; see also [Doc. 17 ¶ 32].

On July 2, 2020, Heagerty filed an Emergency Petition for a Temporary Restraining Order against Wilmington Savings Fund Society, FSB and Residential Credit Opportunities Trust V-E in the Superior Court of Forsyth County, Georgia, [Doc. 17 ¶ 33], and on July 7, 2020, the Honorable David L. Dickinson, Superior

---

[8] Heagerty asserts that AMIP's CEO admitted that AMIP did not have such authority during a telephone call.  [Doc. 17 ¶ 26(b)]; see also [id. ¶ 32(b)].

Court Judge ("Judge Dickinson") granted Heagerty's petition and "restrained the defendants in that case from proceeding with a foreclosure sale of [] Heagerty's home, which had been scheduled for that same day," [id. ¶ 34]; see also [Doc. 17-12], upon finding "no evidence that the address in the foreclosure advertisement was set out in bold type" as required by Ga. Code. Ann. § 44-14-162(a) (West 2008), [Doc. 17-12 at 1-2].[9]   Judge Dickinson clarified that this "Order [was] not prohibiting [d]efendants from further attempts at foreclosure that are in compliance with Georgia law."  [Id. at 4].

---

[9] In applying the Georgia factors for determining whether to grant an interlocutory injunction, which include whether there is "substantial threat that the moving party will suffer irreparable injury if the injunction is not granted," "the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined," "there is a substantial likelihood that the moving party will prevail on the merits of [his] claims at trial," and "granting the interlocutory injunction will not disserve the public interest," Judge Dickinson wrote:

> In the present case, the Court finds that losing one's home is clearly an irreparable injury.  Additionally, the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; to wit, if the foreclosure is enjoined the threatened injury to [d]efendants is only delay.  They may correct their deficiency.  However, failure to enjoin the sale will result in [Heagerty's] loss of the [p]roperty.  Third, given the clear mandate of the statute, there is a substantial likelihood that [Heagerty] will prevail on the merits of this issue.  Finally, granting relief does not disserve the public interest.

[Doc. 17-12 at 2-3 (citation omitted)].

7

Prior to filing the action in the Superior Court of Forsyth County, Georgia, Heagerty filed his original complaint in this Court on June 29, 2020. [Doc. 1]. Defendants moved to dismiss the complaint, [Doc. 14], and after Heagerty filed a consent motion for an extension of time to respond to the motion to dismiss, [Doc. 15], the Court granted him until September 4, 2020, to respond to defendants' motion to dismiss his complaint, [Doc. 16]. On September 1, 2020, Heagerty filed an amended complaint against defendants, [Doc. 17], and on September 15, 2020, defendants moved to dismiss the amended complaint, [Doc. 20].[10] Heagerty opposes defendants' motion to dismiss his amended complaint, [Doc. 24], and defendants have filed a reply in support of their motion, [Doc. 26]. The pending motion, having been fully briefed, is now ripe for ruling.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the Court must accept Heagerty's allegations as true and construe the amended complaint in his favor. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted); Duke v. Cleland, 5 F.3d 1399, 1402

---

[10] Defendants' motion to dismiss Heagerty's original complaint was denied as moot after he timely filed the amended complaint. [Doc. 23].

(11th Cir. 1993); Mulvaney v. Meeks, CIVIL ACTION NO. 2:13cv677-MHT, 2020 WL 7774908, at *1 (M.D. Ala. Dec. 30, 2020) (citations omitted).[11]  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [Heagerty's] obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (last alteration in original) (citations and internal marks omitted); see also Lenbro Holding Inc. v. Falic, 503 F. App'x 906, 909 (11th Cir. 2013) (per curiam) (unpublished) (alterations in original) (citation omitted) ("Allegations entitled to no assumption of truth include '[l]egal conclusions without adequate actual support' or '[f]ormulaic recitations of the elements of a claim.'").

"Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555 (footnote and citation omitted), and

---

[11] "However, the court need not 'accept as true a legal conclusion couched as a factual allegation.'"  Smith v. Delta Air Lines, Inc., 422 F. Supp. 2d 1310, 1324 (N.D. Ga. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  "Additionally, '[c]onclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the [amended] complaint.  If the appended document . . . reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.'"  Id. (alteration in original) (footnote omitted) (quoting Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974)).  Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Heagerty's amended complaint must contain "enough facts to state a claim to relief that is plausible on its face," id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  The Supreme Court in Iqbal held:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

Id. at 678-79 (last alteration in original) (citations omitted); see also Evans v. Ga. Dep't of Behavioral Health & Developmental Disabilities, CV 415-103, 2018 WL 4610630, at *3 (S.D. Ga. Sept. 25, 2018) (alterations in original) (citation and internal marks omitted) ("Although there is no probability requirement at the pleading stage, something beyond . . . mere possibility . . . must be alleged.").

"While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is

improbable,'" <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 556), "[t]o state a plausible claim for relief, [Heagerty] must go beyond merely pleading the 'sheer possibility' of unlawful activity by [] defendant[s] and so must offer 'factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged,'" <u>Stabb v. GMAC Mortg., LLC</u>, 579 F. App'x 706, 708 (11th Cir. 2014) (per curiam) (unpublished) (citation omitted).  "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law." <u>Moore v. McCalla Raymer, LLC</u>, 916 F. Supp. 2d 1332, 1342 (N.D. Ga. 2013), adopted at 1336 (citations and internal marks omitted); <u>see also</u> <u>Glover v. Liggett Grp., Inc.</u>, 459 F.3d 1304, 1308 (11th Cir. 2006) (per curiam) (citation omitted); <u>Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted). "Thus, a motion to dismiss for failure to state a claim must be granted if[,] as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>In re Soler Somohano</u>, 819 F. App'x 873, 875 (11th Cir. 2020) (per curiam) (unpublished) (alteration in original) (citation and internal marks omitted).

## III.   DISCUSSION

Heagerty's amended complaint alleges two claims under the FDCPA.  [Doc. 17].  In Count 1, he asserts a claim against AMIP for a violation of § 1692g, and in

Count 2, he asserts a claim against RL for a violation of § 1692e(5).  [Id. ¶¶ 36-44].

Defendants move to dismiss both counts.  See [Doc. 20].  With respect to Count 1,

AMIP argues that Heagerty has failed to allege facts that plausibly show it is a debt

collector or that he was the object of collection activity by AMIP, which are

required elements of an FDCPA claim.  [Doc. 20-1 at 8-14].  As for Count 2, RL

argues that Heagerty's amended complaint fails to show any violation of the

FDCPA.  [Id. at 15-17].

### A.  Heagerty's FDCPA Claim Against AMIP

Heagerty alleges that "AMIP violated 15 U.S.C. § 1692g by failing to provide

[him] with the information required by subsection (a) of that code section in either

the [November or January AMIP letters] or within five days thereof."  [Doc. 17 ¶¶

36-37].[12]  To state a claim against AMIP under the FDCPA, Heagerty must

plausibly allege:

---

[12] Section 1692g(a) provides that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing" the following information:

    **(1)** the amount of the debt;

    **(2)** the name of the creditor to whom the debt is owed;

    **(3)** a statement that unless the consumer, within thirty days after
       receipt of the notice, disputes the validity of the debt, or any

(1) [he has] been the object of collection activity arising from a consumer debt; (2) [AMIP] . . . qualifies as a "debt collector" under the [FDCPA]; and (3) [AMIP] has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011) (citations omitted); see also Meyer v. Fay Servicing, LLC, 385 F. Supp. 3d 1235, 1243 (M.D. Fla. 2019) (citations omitted).  Defendants challenge the first and second elements of Heagerty's FDCPA claim against AMIP, arguing that he "has failed to show that AMIP is a debt collector under the statute or that he was the object of collection activity from AMIP."  [Doc. 20-1 at 9].

In his amended complaint, Heagerty alleges that AMIP is a "debt collector" because:

---

portion thereof, the debt will be assumed to be valid by the debt collector;

**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

a.      AMIP regularly collects or attempts to collect debts due or owed or asserted to be due or owed to another.

b.      Specifically, AMIP represents institutional and private investors that purchase distressed residential real estate, real estate loans and mortgages that are in default.  AMIP's clients include entities such as Residential Credit Opportunities Trust V-C and Residential Credit Opportunities Trust V-E.

c.      The debts that AMIP collects and attempts to collect are obligations or alleged obligations of consumers to pay money arising out of transactions in which the money, property and services which are the subject of the transaction are primarily for personal, family, or household purposes, including the financing of consumer purchases of residential real estate.

d.      On behalf of its institutional and private investor clients, AMIP communicates with the consumers who own distressed residential real estate and/or whose mortgages and real estate loans are in default.

e.      When having such communications, AMIP routinely uses interstate telephone services, the internet, email and the U.S. Mail to communicate with consumers.  AMIP also uses such methods to communicate with its clients and third-parties involved in its collection efforts.  For example, AMIP routinely sends dunning form letters,[13] materially similar to [the November and January AMIP letters], to consumers in an effort to collect mortgage debts on behalf of its clients.

f.      AMIP also uses an "internet based" asset management system that aids in its debt collection activity.

---

[13] "A 'dunning letter' is a letter to demand payment or collect a debt."  Encarnacion v. Fin. Corp. of Am., Case No: 2:17-cv-566-FtM-38UAM, 2019 WL 932263, at *1 n.2 (M.D. Fla. Feb. 26, 2019) (citing LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1189 n.7 (11th Cir. 2010) (per curiam)).

g.     Through its communications with consumers, AMIP collects and/or attempts to collect debts under the guise of providing homeowners with "appropriate solutions for their homeownership problems," which include, *inter alia*, offering homeowners the opportunity to "vacate" their homes and "be rid of further financial obligation" to the lenders that AMIP represents.  Such collection efforts are AMIP's attempt to ensure that consumers pay their debts "retain their home[s] and avoid foreclosure."

h.     Since 2007-2008, AMIP has collected and "resolved" more than $3 billion of debts related to distressed residential mortgages in the United States.

[Doc. 17 ¶ 3 (last alteration in original) (citations and internal marks omitted)].

"The FDCPA was enacted to eliminate abusive, deceptive, and unfair debt collection practices by debt collectors."  Hines v. Midfirst Bank, CIVIL ACTION FILE NO. 1:14-cv-00505-AT-AJB, 2014 WL 12088559, at *11 (N.D. Ga. Nov. 26, 2014), adopted by 2014 WL 12069861, at *1 (N.D. Ga. Dec. 22, 2014) (citations omitted); see also Acosta v. Campbell, 309 F. App'x 315, 319 (11th Cir. 2009) (per curiam) (unpublished) (citation omitted).  "[Heagerty] must plead factual content that allows the court to draw the reasonable inference that [AMIP] is a 'debt collector' under the FDCPA."  Sobers v. Caliber Home Loans, Inc., CIVIL ACTION FILE NO. 1:16-cv-335-WSD-JKL, 2016 WL 11260333, at *3 (N.D. Ga. July 27, 2016), adopted by 2017 WL 443651, at *6 (N.D. Ga. Feb. 2, 2017) (citing Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1313 (11th Cir. 2015)); see also Anderson v. Deutsche Bank Nat'l Tr. Co., Civil Action No. 1:11-cv-4091-TWT-ECS,

2012 WL 3756512, at *4 (N.D. Ga. Aug. 6, 2012), adopted by 2012 WL 3756435, at

*1 (N.D. Ga. Aug. 27, 2012) (alterations, citations, and internal marks omitted)

("Plaintiff's complaint must plausibly allege that [d]efendants are debt collectors

within the meaning of the FDCPA.").  The FDCPA defines "debt collector" to

include "any person who uses any instrumentality of interstate commerce or the

mails in any business the principal purpose of which is the collection of any debts,

**or** who regularly collects or attempts to collect, directly or indirectly, debts owed

or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6) (emphasis

added).  As AMIP points out, Heagerty "does not attempt to show that AMIP's

'principal purpose' is to collect debts, but instead travels down the path that AMIP

[] 'regularly collects or attempts to collect, directly or indirectly, debts owed or due

or asserted to be owed or due another.'"  [Doc. 20-1 at 11-12 (quoting [Doc. 17 ¶

3(a)])].[14]

---

[14] In the motion to dismiss, AMIP argued that Heagerty's "allegations center[ed] around statements on AMIP's website" were not sufficient to show that it [was] a debt collector.  [Doc. 20-1 at 12-13 (citations omitted)].  In response, Heagerty clarified that his "allegations regarding AMIP's 'internet-based' asset management system [were] not intended to comprehensively demonstrate that AMIP [was] a debt collector," but instead were "merely intended to provide factual support for the allegation that AMIP use[d] an 'instrumentality of interstate commerce,' *i.e.* the internet, in connection with its debt collection activities, which [was] one of the elements of the definition of 'debt collector' set forth in 15 U.S.C. § 1692a(6)."  [Doc. 24 at 5].  However, AMIP correctly noted in reply that "using an instrumentality of interstate commerce [was] only relevant if trying to show that [a] business['] primary purpose [was] debt collection, which [was] not what

16

Heagerty asserts that "[o]n behalf of its institutional and private investor clients, AMIP communicates with consumers who own distressed residential real estate and/or whose mortgages and real estate loans are in default"; that those communications include sending "dunning form letters, materially similar to [the November and January AMIP letters], to consumers in an effort to collect mortgage debts on behalf of its clients"; and that "[t]hrough its communications with consumers, AMIP collects and/or attempts to collect debts under the guise of providing homeowners with 'appropriate solutions for their homeownership problems,'" including "offering homeowners the opportunity to 'vacate' their homes and 'be rid of further financial obligation' to the lenders that AMIP represents."   [Doc. 17 ¶¶ 3(d)-(e), (g)].   AMIP contends that Heagerty has not sufficiently alleged that it is a debt collector because the letters he relies on "are not 'dunning letters' and do not seek to collect a debt" and his other allegations

_____

[Heagerty was] trying to show," [Doc. 26 at 2-3], since, as previously noted, Heagerty's amended complaint alleged that "AMIP regularly collects or attempts to collect debts due or owed or asserted to be due or owed to another," [Doc. 17 ¶ 3(a)]; see also Farquharson v. Citibank, N.A., 664 F. App'x 793, 799 (11th Cir. 2016) (per curiam) (unpublished) (emphasis added) (citation and internal marks omitted) ("Under[] the FDCPA, a party qualifies as a debt collector **either** by using an instrumentality of interstate commerce or the mails in operating a business that has the principal purpose of collecting debts **or** by regularly attempting to collect debts."); Anderson, 2012 WL 3756512, at *4.   Accordingly, this portion of Heagerty's amended complaint does not support his assertion that AMIP is a debt collector.

are "conclusory and plead no facts showing that any communications that AMIP has with consumers [are] for the purpose of debt collection." [Doc. 20-1 at 12].[15]

AMIP also argues that Heagerty has not sufficiently alleged he was the object of collection activity because the letters "do not in any way discuss payment of the debt and are solely informational in purpose." [Id. at 13]. Heagerty responds that because AMIP sent him four letters regarding his mortgage loan, each of which expressly referenced his mortgage loan and homeownership problems and included language at the bottom of each letter that unambiguously stated they were an attempt to collect a debt, he "reasonably or 'plausibly' believed that AMIP's letters were an attempt to collect on his mortgage loan," and the letters were not "merely 'informational'" as defendants assert. [Doc. 24 at 6-9 (citations omitted)]. In light of Heagerty's allegations that AMIP is a debt collector because it "regularly collects or attempts to collect debts due or owed or asserted to be due or owed to another" by sending letters that are materially similar to the November and January AMIP letters he received, [Doc. 17 ¶ 3], and AMIP's arguments which focus on whether those letters sought to collect a debt, see [Doc. 20-1 at 9-14], the Court will presume for purposes of the motion to dismiss that Heagerty has adequately alleged that AMIP is a debt collector and proceed to consider the

---

[15] On this point, Heagerty responds by restating the allegations from his amended complaint and arguing that his allegations are not conclusory. [Doc. 24 at 3-5].

communications at issue, as the Court finds that Heagerty has not plausibly alleged that he was the object of collection activity under the FDCPA.

"When determining whether a communication is 'in connection with the collection of any debt,' [the Court] look[s] to the language of the communication in question—specifically to statements that demand payment and discuss additional fees if payment is not tendered." Farquharson, 664 F. App'x at 801 (citation omitted); see also Caceres v. McCalla Raymer, LLC, 755 F.3d 1299, 1302 (11th Cir. 2014) (citations omitted) (explaining that the statutory definition of "communication" is "very broad," and that the Eleventh Circuit has adopted the reasoning of the Second Circuit, which has "held that if a communication conveys information about a debt and its aim is at least in part to induce the debtor to pay, it falls within the scope of the [FDCPA]"). "A demand for payment need not be expressed," and "[a] letter may imply a demand for payment if it states the amount of the debt, describes how the debt may be paid, provides the phone number to call and address to send the payment to, and expressly states that the letter is for the purpose of collecting a debt." Pinson v. JP Morgan Chase Bank, Nat'l Ass'n, 646 F. App'x 812, 814 (11th Cir. 2016) (per curiam) (unpublished) (citation omitted). "Courts [] consider whether the overall communication was intended to induce the debtor to settle the debt," and "[c]ommunications that are merely 'informational' do not constitute debt collection activity." Wood v. Citibank, N.A.,

No. 8:14-cv-2819-T-27EAJ, 2015 WL 3561494, at *3 (M.D. Fla. June 5, 2015) (citation omitted).[16]

AMIP contends that the letters "do not in any way discuss payment of the debt and are solely informational in purpose," noting that "the words (or derivatives of) pay, demand, or fees never appear anywhere."  [Doc. 20-1 at 13 (citations omitted)].  Heagerty replies that while "[t]here is no question that AMIP's letters informed [him] of the new owners and servicer of his mortgage loan," they "also expressly state that they are 'an attempt to collect a debt,' reference [his] 'homeownership problems' and state that he has options to address those problems," and thus, "it is plausible that AMIP was not merely providing [him] with information regarding his mortgage loan, but also attempting to 'obtain payment or liquidation' of that loan."  [Doc. 24 at 8 (citations omitted)].  Of course, a "communication can have more than one purpose," such as "providing

---

[16] "[A] communication comes within the purview of the FDCPA where it is made with an animating purpose of . . . induc[ing] payment by the debtor."  Roth v. Nationstar Mortg., LLC, Case No: 2:15-cv-783-FtM-29MRM, 2016 WL 3570991, at *2 (M.D. Fla. July 1, 2016) (second and third alterations in original) (citation and internal marks omitted).  "The issue of whether a particular communication's animating purpose is to induce a debtor to pay is determined through the eyes of the 'least sophisticated consumer.'"  Id. at *3 (footnote and citations omitted).  "Nevertheless, [c]ourts have interpreted the least sophisticated consumer standard in a way that protects debt collectors from liability for unreasonable misrepresentations."  Id. at *3 n.4 (alteration in original) (citation and internal marks omitted).

information to a debtor as well as collecting a debt." Pinson, 646 F. App'x at 814 (citation omitted); Ponder v. Ocwen Loan Servicing, LLC, CIVIL ACTION FILE NO. 1:16-CV-4125-ODE-LTW, 2020 WL 4550934, at *14 (N.D. Ga. Apr. 23, 2020) (citation omitted); see also Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1217 (11th Cir. 2012) (explaining that "a communication can[] have dual purposes"). However, nothing in the body of the letters indicates that AMIP was attempting to obtain payment of the debt. See [Docs. 17-3, 17-4, 17-6, & 17-7].

The present case is similar to Farquharson, in which a letter sent by the defendant "outlined a loan modification program that [p]laintiffs could accept by making three timely payments under the [t]rial [p]eriod [p]lan," but "did not demand or even request that [p]laintiffs make any payments under either the [p]lan or the original note." 664 F. App'x at 801. Instead, the letter "merely offered [p]laintiffs this option if they chose to make any further payments," and it "did not indicate that any punitive actions would be taken if [p]laintiffs failed to make payments, nor did it describe any collection efforts apart from the [p]lan process itself." Id. And, while the "loan modification [p]lan clearly provide[d] the [p]laintiffs with an incentive to pay by offering a principal balance reduction and the ability to avoid foreclosure," the Court emphasized the fact that "the loan would stay exactly as it were if [p]laintiffs chose not to participate in the plan." Id. (citation omitted). Thus, "[c]onsidering the substance of the . . . letter," the court

concluded that it was "not a communication in connection with the collection of any debt, as that phrase is understood in th[e Eleventh] Circuit." Id. at 802 (internal marks omitted).  Here, as in Farquharson, the November and January AMIP letters "did not demand or even request that [Heagerty] make any payments[.]" Id. at 801.  Instead, they informed Heagerty of the identities of the new owner and servicer of his mortgage loan and that the owner of his loan had programs designed to help him "regain equity in [his] home" or to assist him "should [he] wish to vacate [the] property and be rid of further obligation," [Docs. 17-3 & 17-6]; see also [Docs. 17-4 & 17-7], but Heagerty's loan would "stay exactly the same as it were if [he] chose not to participate in [these programs]," Farquharson, 664 F. App'x at 801.

Moreover, the letters do not contain "implicit demands for payment," such as by "stat[ing] the amount owed [or] provid[ing] payment and wiring instructions." Mansoorian v. Brock & Scott, PLLC, Case No. 8:18-cv-1876-T-33TGW, 2018 WL 6413484, at *2 (M.D. Fla. Dec. 6, 2018) (citations omitted) (finding letters constituted collection activity where they stated the amount owed, provided payment instructions, and discussed the repercussions if payment was not received or if the payment tendered was less than the amount due).  The letters also did not provide "the phone number [or] address to [which to] send payment," Roth, 2016 WL 3570991, at *3 (second alteration in original) (citations and internal

marks omitted), and instead, simply provided the phone number for the servicer of Heagerty's loan so that he could confirm the identity of the new owner of his loan or ask any questions that he had, [Docs. 17-3, 17-4, 17-6, & 17-7].

"A review of both [the November and January AMIP] letters demonstrates that the communications are purely informational." Wood, 2015 WL 3561494, at *4.  The letters informed Heagerty that there was a new servicer and a new owner of his mortgage loan and that there were programs available to him that were designed to "fit [his] current financial needs and to regain equity in [his home]" or to assist him should he "wish to vacate [the] property and be rid of further financial obligation," [Docs. 17-3 & 17-6]; see also [Docs. 17-4 & 17-7], "but they [did] not specifically reference [Heagerty's] debt, reflect that [his] debt was past due, demand payment, or threaten consequences," Dyer v. Select Portfolio Servicing, Inc., 108 F. Supp. 3d 1278, 1283 (M.D. Fla. 2015).  Merely "referenc[ing] [] Heagerty's 'mortgage loan' and his 'homeownership problems'" and identifying options related thereto, [Doc. 24 at 6 (citations omitted)], does not, as Heagerty insists, show that these letters were intended to collect a debt.

AMIP acknowledges that "the bottom of each letter (separate from the rest of the text) says '[t]his is an attempt to collect a debt' and that '[a]ny information will be used for that purpose,'" but asserts that "this does not transform the actual

substance of the letter[.]"[17]   [Doc. 20-1 at 13-14 (first and second alterations in original)]; <u>see also</u> [Docs. 17-3, 17-4, 17-6, & 17-7 (stating at the bottom of each letter, after the signature of AMIP's CEO:  "**This is an attempt to collect a debt. Any information obtained will be used for that purpose.**")].  The Court agrees because, as Heagerty acknowledges, <u>see</u> [Doc. 24 at 9 (citations omitted)], this kind of language, on its own, is not sufficient to show that AMIP was engaged in collection activity, <u>see</u> <u>Warren v. Countrywide Home Loan, Inc.</u>, CIVIL ACTION NO. 1:08-CV-2202-ODE, 2008 WL 11449047, at *4 (N.D. Ga. Oct. 20, 2008), <u>aff'd</u>, 342 F. App'x 458 (11th Cir. 2009) (per curiam) (unpublished); <u>see also</u> <u>McDaniels</u>

---

[17] AMIP contends that "this language is from 15 U.S.C. § 1692e(11), which requires that debt collectors include a statement in their initial communication, and all communications thereafter, 'that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose,'" and that "this language is commonly added to communications by entities who are not actually debt collector[s] under the [FDCPA] or acting to collect a debt" because "these entities are concerned that a court could find them and the communication covered by the FDCPA, so they err on the side of caution and include it."  [Doc. 20-1 at 14]; <u>see also</u> <u>Chomilo v. Shapiro, Nordmeyer & Zielke, LLP</u>, Civ. No. 06-3103 (RHK/AJB), 2007 WL 2695795, at *6 (D. Minn. Sept. 12, 2007) (footnote and citation omitted) (noting that defendant "argu[e]d that it only included FDCPA warnings in its [] communications [with the plaintiff] out of an abundance of caution," and that "if [defendant] include[d] FDCPA disclaimers in its notices then it may [have] be[en] seen as holding itself out as a debt collector under the FDCPA, but if it [did] not include such disclaimers then it [would] subject[] itself to potential liability for failing to comply with the FDCPA if a court were to determine that [it was] a debt collector," and thus, the court would "not penalize [defendant] for having to make a Hobson's choice in this unsettled area of the law").

v. Equityexperts.com, LLC, CIVIL ACTION FILE NO.: 1:18-CV-03535-TCB-JCF, 2020 WL 7408761, at *5 (N.D. Ga. June 24, 2020), adopted by 2020 WL 7408764, at *1 (N.D. Ga. July 13, 2020) (citations and internal marks omitted) (concluding that the boilerplate language stating "This firm is a debt collector. We are attempting to collect a debt, and any information obtained will be used for the purpose of collecting the debt," without more, was "not enough to make [it] a communication in connection with the collection of any debt").  Rather, the Court must view the communication as a whole to determine whether it constituted collection activity under the FDCPA.  See Daley v. Bono, 420 F. Supp. 3d 1247, 1257-58 (M.D. Fla. 2019) (emphasis added) (citation and internal marks omitted) ("[C]ourts should [] consider whether **the overall communication** was intended to induce the debtor to settle the debt."); Roth, 2016 WL 3570991, at *3 (emphasis added) ("The key question is whether 'the least sophisticated consumer,' reading such language **in its entirety**, would believe that the sender was attempting to induce payment on a debt."); see also Barber v. Rubin Lublin, LLC, Civil Action File No. 1:13–CV–975–TWT, 2013 WL 6795158, at *10 (N.D. Ga. Dec. 20, 2013), adopted at *1 (citations omitted); Prickett v. BAC Home Loans, 946 F. Supp. 2d 1236, 1249 (N.D. Ala. 2013). Here, despite the disclaimer provided at the bottom of each letter, the plain language of AMIP's communications with Heagerty, when considered as a whole, reveals that the purpose of the communication was not collection of a debt.  See

Martinez v. McCalla Raymer, LLC, CIVIL ACTION NO. 1:11-CV-1513-TCB-ECS, 2011 WL 13319302, at *2 (N.D. Ga. Sept. 29, 2011), adopted by 2011 WL 13319301, at *1 (N.D. Ga. Oct. 31, 2011) (all caps and citations omitted) (finding the plain language of the defendant's communication with the plaintiff "support[ed] the finding that [d]efendant was not engaging in 'debt collection' under the FDCPA" where, even though the letter contained language stating that it "[was] an attempt to collect a debt," "the body of the letter" indicated a purpose distinct from debt collection).[18]

Because "[n]one of the letters demanded payment from [Heagerty], directly or indirectly," nor did they "discuss[] specifics of the underlying debt, such as the terms of payment or deadlines," and "considering the letters from the perspective of the least sophisticated debtor, the 'animating purpose,' i.e., [AMIP's] intent in sending the letters, does not appear to be to collect the debt or induce [Heagerty] to settle the debt," but rather was to "provide [Heagerty] with information," the "Court concludes, as a matter of law, that the [November and January AMIP]

---

[18] Heagerty argues that because AMIP's letters "make[] it clear that it is not the owner or the servicer of [his] mortgage loan," it is "plausible that AMIP was a debt collector attempting to obtain payment on [his] mortgage loan[.]"  [Doc. 24 at 7].  However, Heagerty does not cite any authority to support his position that AMIP's status as neither the owner nor the servicer of his mortgage loan suggests that it was a debt collector or engaged in collection activity in this case, see [id.], and thus, the Court finds this argument unpersuasive.

letters received by [Heagerty] were not communications sent in connection with the collection of a debt." <u>Dyer</u>, 108 F. Supp. 3d at 1282 (footnote omitted). Therefore, Heagerty has failed to state a claim against AMIP, and Count 1 of the amended complaint is due to be dismissed. <u>See Wood</u>, 2015 WL 3561494, at *4 (granting defendant's motion to dismiss plaintiff's FDCPA claim where the letters at issue did "not constitute debt collection activity and [were] not subject to FDCPA constraints").

**B.    Heagerty's FDCPA Claim Against RL**

Heagerty asserts that RL "violated 15 U.S.C. § 1692e by threatening to take actions that could not legally be taken" when RL threatened to foreclose on the property even though it could not legally do so because the "April and July Notices of Sale were defective." [Doc. 17 ¶ 41].  In particular, he contends that the notices were defective because they failed to set out the property address, city, and zip code in bold type as required by Ga. Code. Ann. § 44-14-162 (West 2008), and they failed to correctly identify the entity with full authority to negotiate, amend, and modify all terms of the mortgage as required by Ga. Code. Ann. § 44-14-162.2 (West 2008), and instead incorrectly identified AMIP as the entity with such authority.  [<u>Id.</u> ¶¶ 26, 32].  RL argues that Count 2 should be dismissed for failure to state a claim because it is not a debt collector under the FDCPA, [Doc. 20-1 at

15], and the alleged errors in the foreclosure advertisements "do not mean that RL could not legally pursue a non-judicial foreclosure sale," [id.].  The Court agrees.

Section 1692e provides, in pertinent part: "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).  Heagerty alleges that because the April and July Notices of Sale did not comply with Georgia law, RL was not legally permitted to foreclose on the property and thus, RL violated § 1692e(5) by threatening action it could not legally take when it sent the February and May letters threatening foreclosure.  [Doc. 17 ¶¶ 21, 26-27, 32, 41 ("[RL] could not legally foreclose on [the property] because the April and July Notices of Sale were defective.")].

Although RL's argument that it is not a debt collector is not well-developed, see [Doc. 20-1 at 15], and Heagerty has not addressed it in his response, see [Doc. 24], the issue merits mention of the Supreme Court's ruling in Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029, 1038 (2019), in which it "clarified that the FDCPA's definition of debt collectors consists of a 'primary definition' and a 'limited-purpose definition' found within the third sentence of Section 1692a(6)." Sciortino Bankr. Est. v. Shapiro Pendergast & Hasty, LLP, CIVIL ACTION FILE NO. 1:18-CV-1340-AT-JFK, 2019 WL 7496253, at *7 (N.D. Ga. Nov. 27, 2019),

adopted by 2019 WL 7493533, at *1 (N.D. Ga. Dec. 17, 2019) (citation omitted).  The primary definition of a "debt collector," found in the first sentence of § 1692a(6), is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6); see also Obduskey, 139 S. Ct. at 1035-36 (citation omitted).  On the other hand, the limited-purpose definition of "debt collector" that applies only to § 1692f(6) of the FDCPA "'also includes any person . . . in any business the principal purpose of which is the enforcement of security interests.'"  Obduskey, 139 S. Ct. at 1036 (alteration in original) (quoting 15 U.S.C. § 1692a(6)).[19]

---

[19] A debt collector falling solely within "the limited-purpose definition" is only prohibited from the following:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> (B) there is no present intention to take possession of the property; or
>
> (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6) (emphasis omitted).  As discussed hereinafter, Heagerty does not state a claim based on § 1692f(6).

"The Supreme Court considered the interplay between these definitions to determine whether and to what extent an entity principally involved in 'the enforcement of security interests' is a debt collector subject to the FDCPA." Sciortino Bankr. Est., 2019 WL 7496253, at *7 (citation and internal marks omitted). In doing so, the Supreme Court reasoned that "[the] § 1692f(6) exception[] place[s] those whose 'principal purpose . . . is the enforcement of security interests' outside the scope of the primary 'debt collector' definition where the business is engaged in no more than the kind of security-interest enforcement" that was at issue in that case: nonjudicial foreclosure proceedings. Obduskey, 139 S. Ct. at 1033 (fourth alteration in original) (citation omitted). Thus, the Supreme Court held that, "but for § 1692f(6), those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the [FDCPA]." Id. at 1038. Despite plaintiff's argument in Obduskey that the defendant law firm "engaged in *more* than security-interest enforcement by sending notices that any ordinary homeowner would understand as an attempt to collect a debt backed up by the threat of foreclosure," the Court determined that those notices were merely "antecedent steps required under state law to enforce a security interest," which were involved in "every nonjudicial foreclosure scheme," and therefore did not transform this "security-interest enforcer into a debt collector subject to the main coverage of the [FDCPA]." Id. at 1039-40 (citations omitted).

The conduct about which Heagerty complains in this case concerns RL's communications about nonjudicial foreclosure proceedings. Specifically, RL published two Notices of Sale Under Power advertising scheduled foreclosure sales of the property in this case. [Docs. 17-9 & 17-11]. Heagerty asserts that while these notices provided the property address, they did not set it out in bold font, and they incorrectly identified AMIP as the entity with authority to negotiate, amend, and modify all terms of the mortgage loan. [Doc. 17 ¶¶ 26, 32]. Thus, Heagerty argues that because the notices of sale failed to comply with Georgia law, "they were patently defective and made it impossible for RL to legally foreclose on [the property]." [Doc. 24 at 11]. Heagerty has not asserted any claim against RL under § 1692f(6), nor do the allegations of his amended complaint appear to support such a claim, see [Doc. 17], and since the conduct he complains about concerns only the enforcement of a security interest through nonjudicial foreclosure, his claim in Count 2 would be subject to dismissal if RL does not come within the primary definition of a "debt collector" for application of § 1692e(5), see Obduskey, 139 S. Ct. at 1038-40. However, since RL has not advanced this specific argument, the Court will presume for purposes of the motion that Heagerty has adequately alleged that RL is a debt collector. See [Doc. 17 ¶ 5]; cf. Bates v. Green Farms Condo. Ass'n, 958 F.3d 470, 479-80 (6th Cir. 2020); Mathieson v. Wells Fargo Bank, NA as Tr. for Pooling & Servicing Agreement Dated as of June 1, 2006

Securitized Asset Backed Receivables LLC Tr. 2006-FR2 Mortg. Pass-Through Certificates, Series 2006-FR2, CAS NO. 8:20-cv-2728-WFJ-SPF, 2021 WL 877698, at *6 & n.11 (M.D. Fla. Mar. 9, 2021).  Nevertheless, the "*Obduskey* opinion makes clear that the requirement of state law was central to its holding that the letter at issue there did not subject the law firm to the full range of FDCPA," Gagnon v. Hal P. Gazaway & Assocs., LLC, 3:19-cv-178 JWS, 2019 WL 4539926, at *2 (D. Alaska Sept. 19, 2019); see also Cooke v. Carrington Mortg. Services, Civil Action No. TDC-18-0205, 2019 WL 3241128, at *2 (D. Md. July 18, 2019) (citation omitted) ("The Supreme Court's holding in *Obduskey* extends [] to security-interest enforcers engaged in nonjudicial foreclosure proceedings in a manner required by state law."); Sevela v. Kozeny & McCubbin, L.C., 8:18CV390, 2019 WL 2066924, at *4 (D. Neb. May 2, 2019) (explaining that Obduskey "specifically limited its decision to cases where the conduct engaged in by a defendant was required by state law"), and in this case, Heagerty's amended complaint still fails to state a plausible claim in Count 2 because RL did not threaten action it could not legally take despite deficiencies in the notices.

Georgia's foreclosure statute provides that "[n]o sale of real estate under powers contained in mortgages, deeds, or other lien contracts shall be valid . . . unless notice of the sale shall have been given as required by Code Section 44-14-162.2," and "[i]f the advertisement contains the street address, city, and ZIP Code

of the property, such information shall be clearly set out in bold type."  Ga. Code. Ann. § 44-14-162(a) (West 2008).  Section 44-14-162.2 requires that the notice "be in writing"; "include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor"; and "be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the secured creditor."  Ga. Code. Ann. § 44-14-162.2(a) (West 2008).  However, the "minimum legal requirements of a foreclosure advertisement are prescribed in [] § 9–13–140(a), and only a failure to properly include those items will render the advertisement defective as a matter of law."[20] Diplomat Constr., Inc. v. State Bank of Tex., 726 S.E.2d 140, 146 (Ga. Ct. App. 2012) (footnote omitted).  "If a foreclosure advertisement is not defective as a matter of law, defects in it will prevent confirmation only if the factfinder determines those defects chilled bidding and

---

[20] Section 9-13-140(a) provides that such advertisements must include "a full and complete description of the property to be sold, making known the names of the plaintiff, the defendant, and any person who may be in the possession of the property," and in "the case of real property, such advertisement shall include the legal description of such real property and may include the street address of such real property, if available, but provided that no foreclosure shall be invalidated by the failure to include a street address or by the insertion of an erroneous street address."  Ga. Code Ann. § 9-13-140(a) (West 2021).

caused an inadequate selling price."[21]  Id.; see also Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.E.2d 842, 845 (Ga. Ct. App. 2004) (footnote omitted) ("Not every irregularity or deficiency in a foreclosure advertisement will void a sale."); Oates v. Sea Island Bank, 322 S.E.2d 291, 293 (Ga. Ct. App. 1984) (citations omitted).

As previously discussed, Heagerty asserts that the April and July Notices of Sale were defective because they failed to comply with the requirements of Ga. Code Ann. §§ 44-14-162(a) and 44-14-162.2(a) (West 2008) by setting forth the property address in bold font and properly identifying the entity with authority to negotiate, amend, and modify all terms of the mortgage.  [Doc. 17 ¶¶ 26, 32]. Heagerty challenged the July Notice of Sale by filing an action in the Superior Court of Forsyth County seeking a temporary restraining order to prevent the impending foreclosure sale, which was granted by Judge Dickinson on July 7, 2020.  [Doc. 17-12]; see also [Doc. 17 ¶¶ 33-34].  Judge Dickinson agreed with Heagerty that the July Notice of Sale was deficient under § 44-14-162(a) because it

---

[21] "A primary object of the advertisement is to attract buyers who will compete against one another so as to yield the highest price; its contents are important to the process," and thus, "errors that would not confuse the bidding intentions of any potential bidder of sufficient mental capacity to enter a binding contract for the sale of the real property do not show a chilling of the sale so that a fair market value bid was not obtained."  Diplomat Constr., Inc., 726 S.E.2d at 146 (footnote omitted).

did not set out the property address in bold type.  [Doc. 17-12 at 1-2].  However, Judge Dickinson also noted that the defendants could "correct their deficiency" in another notice of sale, and thus, he did not "prohibit[ them] from further attempts at foreclosure that [were] in compliance with Georgia law."  [Id. at 3-4].  Since defendants retained the legal authority to foreclose, RL did not threaten to take action that could not legally be taken, but simply failed to meet "antecedent steps required under state law to enforce a security interest," Obduskey, 139 S. Ct. at 1039 (citation omitted), based on deficiencies in the challenged notice.

Accordingly, Heagerty's allegations are insufficient to support a claim under § 1692e(5) because he has not plausibly alleged that RL threatened action it could not legally take.  The February and May RL letters specified that RL "represent[ed] Wilmington Savings Fund Society, FSB, as [o]wner [t]rustee of the Residential Credit Opportunities Trust V-E, successor in interest to the [o]riginal [l]ender," and that it was "retained to non-judicially foreclose the [l]oan" as its client was "seeking [] to enforce its rights . . . pursuant to the [l]oan[.]"  [Docs. 17-8 & 17-10 (emphasis omitted)]; see also [Docs. 17-6 & 17-7 (notifying Heagerty that Residential Credit Opportunities Trust V-E was the new owner of his mortgage loan)]; [Docs. 17-9 & 17-11 (April and July Notices of Sale stating that a foreclosure sale was scheduled pursuant to the power of sale included in the security deed that had been last transferred to Wilmington Savings Fund Society, FSB as owner

trustee of the Residential Credit Opportunities Trust V-E)].  Under Georgia law, "the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed[.]"  You v. JP Morgan Chase Bank, N.A., 743 S.E.2d 428, 433 (Ga. 2013); see also James v. Bank of Am., N.A., 772 S.E.2d 812, 815 (Ga. Ct. App. 2015) (quoting Stewart v. Suntrust Mortg., Inc., 770 S.E.2d 892, 897 (Ga. Ct. App. 2015)) ("Under Georgia law, 'a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies.'").

Although Heagerty contends that the notices of sale were defective under Georgia law, he does not allege anywhere in the amended complaint that he was not in default on the mortgage loan, that Residential Credit Opportunities Trust V-E was not the current owner of the mortgage loan, or that RL could not exercise the power of sale on behalf of the trustee.  See [Doc. 17].  Indeed, there is no indication from the amended complaint that RL could not simply correct the deficiencies in a new notice of sale and exercise its authority to lawfully foreclose on the property, and thus, Heagerty has failed to plausibly allege that RL threatened action it could not legally take.  See Pignato v. Ocwen Loan Servicing, LLC, Civil Action No. 2:16-CV-00101-WCO-JCF, 2017 WL 10940909, at *8 (N.D. Ga. Apr. 28, 2017), adopted by 2017 WL 10940910, at *1 (N.D. Ga. June 22, 2017) (citations omitted) (concluding that plaintiff failed to state a claim under § 1692e(5)

based on the defendant's Notice of Sale Under Power because "the action it threaten[ed]—namely, foreclosure of the [p]roperty—[was] squarely within its rights as the servicer for [the entity] who own[ed] the loan," which had been assigned the security deed). "Therefore, even when construed in the light most favorable to [Heagerty], the [amended] complaint fails to state a claim that [RL] took any deceptive, false or misleading action in violation of the FDCPA," Harvin v. Nationwide Title Clearing, CIVIL ACTION FILE NO. 1:14-CV-02130-TCB-JFK, 2014 WL 12634300, at *11 (N.D. Ga. Nov. 10, 2014), adopted by 2015 WL 12880527, at *4 (N.D. Ga. Jan. 28, 2015), aff'd, 632 F. App'x 599 (11th Cir. 2016) (per curiam) (unpublished) (citing 15 U.S.C. § 1692e), and Count 2 of Heagerty's amended complaint is due to be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that defendants' motion to dismiss, [Doc. 20], be **GRANTED** and that Heagerty's amended complaint be **DISMISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to terminate this referral.

**IT IS SO RECOMMENDED** and **DIRECTED**, this 20th day of April, 2021.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

37